1838.<br>Crosier<br>v.<br>Acer.

---

### CROSIER v. ACER and others.

An agreement by a party to whom a release is given for the purpose of rendering him competent as a witness, that after he has been sworn and examined on the trial the release shall be delivered up and cancelled, is a fraud upon the party to the suit against whom the witness is to be examined, and is therefore void.

No party to a fraudulent agreement can sustain a suit founded upon the neglect of his adversary to carry such agreement into effect.

A judgment is not a lien upon lands, as against bona fide purchasers, for any longer period than ten years from the time of docketing thereof; although the contingency upon which the collection of the judgment depended was such that no execution could have been taken out on the judgment within the ten years.

Where both parties to an agreement have acted upon a mistake as to the law, if the nature of the transaction is such that they cannot be restored sub-

1838.

Crosier
v.
Acer.

stantially to their rights as they existed previous to the agreement, the court of chancery cannot relieve against the consequences of such mistake. Whether the court of chancery can relieve a party against a mere mistake of law, in any case, where the adverse party has been guilty of no fraud or unfair practice; QUÆRE?

Where a bill is dismissed, at the hearing, upon a mere defect of form in the pleadings, and not upon the merits of the case, it should be dismissed without prejudice to the complainant's right to institute a new suit if he thinks proper to do so.

March 6.

ABOUT the year 1812, G. Perrin the defendants' testator purchased of Simon Stone one third of a lot of land in Monroe county called the Budlong lot; the title to which Stone agreed to warrant. And as there was some question about the goodness of the title conveyed to Perrin by Stone, Perrin took from the latter a judgment in the supreme court, to indemnify him against the failure of such title. Stone at the same time took from Perrin a written agreement that the judgment should only be enforced in case there should be a failure of the title to the lot conveyed to him by Stone. In 1816 the complainant purchased of S. Stone a lot of land, on which Perrin's judgment was then a lien, and paid the purchase money therefor; having then no other notice of the existence of the judgment except the constructive notice which the law implies from its being docketed. S. N. Chubb and Orrin Stone also obtained the title of other lands from S. Stone, about the same time, on which this judgment was then a lien. Another part of the Budlong lot had been conveyed by S. Stone to his son Elias, and had been deeded by the latter to G. B. Richardson. In 1827 an ejectment suit was brought against Richardson, for the recovery of that part of the lot, by those who claimed the whole of the Budlong lot under the adverse title; in which suit the several parties interested in the Budlong lot under S. Stone's title were anxious to improve him as a witness. The counsel of Richardson supposing it to be necessary to have a release of Perrin's judgment in order to make Stone a competent witness, and such counsel, as well as Chubb, Crosier, and O. Stone, supposing that Perrin's judgment was still a lien on the lands held by them, although they obtained their conveyances from S. Stone more than ten years before that

1838.

Crosier
v.
Acer.

time, a new arrangement was made, to secure Perrin's rights to an indemnity against the failure of his title, and at the same time to obtain a release from him to S. Stone ; so that the latter might be examined as a witness for the defendant Richardson in the ejectment suit. In pursuance of that arrangement Crosier, Chubb, and O. Stone gave a judgment bond to Perrin, for the amount of the old judgment against S. Stone, including the interest thereon, except $50 which Perrin agreed to deduct. Perrin thereupon gave to them a written agreement similar to the one which was executed upon the giving of the old judgment. He also executed to S. Stone a general release ; and the latter was afterwards examined as a witness for the defendant on the trial of the ejectment suit. That trial resulted in a verdict in favor of Richardson the defendant ; but a new suit was afterwards instituted in which those who claimed title adverse to the defendant recovered that part of the lot. Perrin then proposed to Crosier and O. Stone to compromise the controversy with the adverse claimant, as to the residue of the Budlong lot which was then held by the heirs of Perrin's grantee. They declined consenting to a compromise. A suit was thereupon brought against those who had derived title under Perrin for that part of the lot ; which suit was defended by Perrin, who had warranted the title to his grantees, but such defence was unsuccessful. Upon this last trial it was thought advisable by those who were interested in the defence of the title derived from S. Stone to improve O. Stone, one of the defendant's in the second judgment, as a witness. Perrin thereupon consented to restore his competency by discharging the second judgment, and taking Crosier's note for two thirds of the amount, and Chubb's note for the other third, in lieu thereof. This arrangement was consummated accordingly. And Crosier having neglected to indemnify Perrin, or to pay his note after the unsuccessful termination of this last suit, the executors of Perrin brought a suit at law upon the note, to recover the amount due thereon pursuant to the agreement. Crosier thereupon filed his bill in this cause to be relieved against the payment of his note, and for a perpetual injunction to

restrain the defendants from proceeding at law thereon. The complainant among other things alleged that he was ignorant of the law at the time he united with Chubb and O. Stone in giving the judgment bond, and that he then supposed the first judgment was a lien upon the land which he had purchased of S. Stone more than eleven years before ; but that he was subsequently advised that the lien of the judgment was extinguished as to his land at the expiration of ten years from the recovery of such judgment. The bill also charged that, at the time of the execution of the judgment bond and release, Perrin agreed that after the trial the release should be given up to him by S. Stone, and that he would give up the judgment bond, so as to restore the first judgment as it stood before ; but that after the trial he refused to carry that agreement into effect, and unfairly and fraudulently procured a judgment to be entered thereon. This allegation in the bill was denied by the answer of the defendants. After the testimony in the cause was closed the case was heard upon the pleadings and proofs, before the vice chancellor of the eighth circuit ; who dismissed the bill with costs. From this decision of the vice chancellor the complainant appealed.

*A. Sampson,* for the appellant.

*Ira Bellows,* for the respondents.

THE CHANCELLOR. 1 agree with the vice chancellor that the allegations of fraud and unfairness on the part of Perrin, as charged in the complainant's bill, are not sustained by the proofs in the case. It is not at all improbable, that the parties to the arrangement of 1827 may have had some loose conversation, prior to the consummation of the agreement, upon the subject of giving back the release after the trial, for the purpose of restoring them to their previous rights under the old judgment. But no one who had any correct ideas of legal proceedings could for a moment have supposed that a release to a witness, executed under an agreement that it should be delivered up by him after the

1838.

Crosier
v.
Acer.

trial, would restore his competency; or that a judgment, when once discharged by the execution and delivery of a valid release to the judgment debtor, could be restored again, so as to continue the lien thereof on the lands of third persons, merely by delivering up such release to the complainant. And as the arrangement was finally consummated, by the execution of the written instruments, under the advice and in the presence of the counsel in the cause, it is wholly incredible to suppose that the papers were executed and delivered under any such agreement. Besides it appears from the evidence that, at the time when the bond and warrant were executed and delivered, the conditions upon which such judgment was to be enforced were put into the form of a written stipulation, signed by Perrin and delivered to the parties who had executed the bond and warrant, or to some of them for the benefit of all. Whatever, therefore, had passed between the parties or any of them by parol, previous to that time, as to the conditions upon which the bond and warrant were to be enforced, was merged in this written agreement. And parol evidence as to the previous declarations of any of the parties, showing a different agreement, must be laid entirely out of the question in the decision of the cause.

Again; the execution of a release, to restore the competency of a witness, under a secret agreement with him that the release should be given up and cancelled after the trial, for the purpose of restoring the parties to their former situation, would be a fraud upon the adverse party and an imposition upon the court. No party to such a fraudulent agreement can therefore come into court, as a complainant, to be relieved because his adversary has not carried such an agreement into effect. This disposes of so much of the complainant's bill as seeks relief on the ground of the alleged agreement to take back the release and deliver up the bond and warrant after the trial should have taken place. The giving of the note for two thirds of the judgment, long after that trial, and after the complainant knew that a judgment had been entered on the bond and warrant, was also a voluntary waiver of the alleged agreement to deliver them

up, even if such an agreement would be legal and had actually been made.

From the evidence there is not the least reason for believing there was any intent to impose upon the complainant, by inducing him to suppose the judgment was a lien upon his lands when Perrin knew it was otherwise. The complainant's counsel is undoubtedly right in supposing that the first judgment was not in fact a legal lien upon the complainant's land, in 1827. It ceased to be a lien as against bona fide purchasers at the expiration of ten years from the docketing thereof, even if they had actual notice of its existence, unless they took their title subject to the payment thereof as between them and the judgment debtor, or with a view to defeat the lien of the creditor. (5 *Paige's Rep.* 493.) And it made no difference as to the continuance of the lien of the judgment, against bona fide purchasers, that the nature of the judgment was such that the collection could not be enforced within the first ten years after the docketing thereof. The party should have taken a mortgage upon the lands of Stone, as a security against the failure of a *doubtful title, instead of* a judgment the lien of which might cease before the question of title was finally settled. Whether the judgment was not in 1827 a subsisting lien upon the two lots quitclaimed by O. Stone, is a matter of more doubt. If the whole transaction in relation to those two lots was not a covinous proceeding to defraud his father's creditors, as it most probably was, the title had passed out of O. Stone by the sale under the judgment against him. But if the sale under that judgment as well as the original transfer from the father was merely fictitious, the lien of Perrin's judgment never was divested. O. Stone never having paid any thing, and having taken back the note given by him to his father for the consideration or pretended consideration of the deed, he was not a bona fide purchaser within the intent and meaning of the statute limiting the lien of the judgment to ten years. Injustice has been done both to Crosier and Chubb in these transactions, under a mistake of their legal rights as to the lien of the judgment and as to the property which should be first applied to satisfy the same if the lien

still continued as to all the lands, of which S. Stone was the owner at the time of docketing that judgment in 1812. I am inclined to think, however, that Perrin was equally ignorant of his legal rights with Crosier and Chubb ; that if there was any fraud in the case it was a fraud and imposition practised upon all three of them by Orin Stone and his father, to save the lands of the latter from the lien of the judgment ; that in 1827 O. Stone knew that the two lots conveyed to him without consideration ought in justice to be first applied to satisfy the judgment against his father ; and that he intentionally concealed that fact from Perrin as well as from Crosier and Chubb, for the purpose of inducing the two last to join him in the new judgment and to obtain a release of the judgment which was then a subsisting lien upon the two lots before referred to. It is probable, however, that he too was ignorant that the lien of the judgment was at an end as to bona fide purchasers ; as the counsel employed by the Stones to defend the suit brought against Richardson made the same mistake as to the question of law.

The new judgment was not without consideration ; as the old one was still valid as against S. Stone, and against all the lands formerly owned by him, not then in the hands of bona fide purchasers for a valuable consideration. And if this court can relieve against a mistake in law in any case where the defendant has been guilty of no fraud or unfair practice, which is at least very doubtful, it must be in a case in which the defendant has in reality lost nothing whatever by the mistake, and where the parties can be restored to the same situation, substantially, in which they were at the time the mistake happened. Here the mistake was clearly one of law, and not a mere mistake of fact. The complainant and Chubb had both received their deeds in 1816. If they had not mistaken the law, therefore, they must have known that a judgment against their grantor was not a subsisting lien upon their lands in 1827, even if they had not been apprized by the original stipulation, which was present when the second bond and warrant were executed, that the original judgment was taken as early as 1812. Neither is it possible in

this case to restore the defendants to the same situation in which Perrin stood, in reference to his rights, before this mistake in law occurred. The first judgment being released, the lien thereof was gone as against the two lots conveyed to O. Stone without any consideration paid therefor. And upon the faith of the arrangement made with the complainant and others, in 1827, Perrin lost the advantage of a compromise with the adverse claimants as to his part of the lot, and subjected himself to the costs of a new litigation against his grantees ; as those who had given the second judgment insisted upon a further litigation for their benefit. Then was the time when they should have put themselves upon their legal or equitable rights, if they meant to insist upon any unfairness or want of consideration in the second judgment, instead of making a new arrangement to get one of their number released from that judgment.

I lay out of view in this case the objection of variance between the contract as set out in the bill and the one proved. For if that was the only objection to a decree in favor of the complainant, the bill should have been dismissed without prejudice to his legal and equitable rights in any future litigation ; instead of a general decree, which is conclusive upon the rights of the parties both at law and in equity. But for the reasons before stated I think the general decree in favor of the defendants was right. The same must therefore be affirmed, with costs.