By the Court.—Van Vorst, J.
When the check, in the altered condition in which it had been taken by the defendants as genuine, came back to the cashier of the plaintiffs’ bank on the 17th day of February, it was there also received as genuine, and its payment through the exchanges at the clearing-house was adopted and ratified, and as a valid check it was charged to the account of Vermilye & Co., the drawers of the same.
The alteration being in the body of the instrument, and not in the signature of their customer, which they were presumed to know, they are not, by the act of recognition and payment of it as valid, under an honest belief that it was so, disentitled from establishing that the instrument was a forgery, or from recovering back the money paid (Bank of Commerce v. Union Bank, 3d Coms. 230).
The plaintiffs, on the 17th day of February, were deceived by the fraudulent alteration of the check, as the defendants themselves had been on the 16th, and the recognition by each bank of the check as valid was made under a clear mistake of facts. Ho effect can be given to the certification of the check on the 15th of February by Adriance, the clerk of plaintiffs, other than that the signature was genuine, and that the check was good for $56.75, the amount for which it was drawn (Farmers and Mechanics Bank v. Butchers and Drovers Bank, 16 N. Y. 135); and the money paid by plaintiffs over and above that sum they are entitled to recover back from the defendants, unless there be such facts and circumstances peculiar to this case as would justify the defendants, according to equity and conscience, to detain it from the plaintiff. The defendants claim that *288 the plaintiffs have "been guilty of laches, which has resulted in loss to them, and that this negligence of plaintiffs should defeat a recovery. It was urged on the argument Tby defendants’ counsel that it was negligence in the plaintiffs not to have entered the check when certified Tby its number, in addition to its date and amount; that the entry of the number would have aided in detecting the forgery; and further, that when the check came back to them on the 17th of February, they did not make sufficient inquiry in regard to its genuineness before accepting it as a true instrument.
The defendants urge substantially that the plaintiffs could and should have detected the forgery on the 17th of February, and should have immediately given notice thereof. The evidence on the trial was to the effect that it was not customary to enter certified checks on the books by their number, but that memoranda of the dates and amounts were sufficient for the purposes for which the book was kept.
The question as to whether or not the omission of plaintiffs in this respect was negligence, was not submitted to the jury, nor was any request made that it should be ; and it cannot be said as matter of law that the plaintiffs were bound to make such entry, and that a failure to do so is negligence. But that the plaintiffs did not make all the inquiry and examination on the return of the check which the defendants now demand, affords no good reason why the plaintiffs should not recover in this action.
It was without doubt formerly the rule that if a party pays money under a mistake of fact, and no laches is imputable to him in respect of his omitting to avail himself of the means of knowledge within his power, he might recover back the money (Milnes v. Duncan, 6 B. & C. 671). But the limitation of the rule with respect to laches in such cases, has been modified (Kelly v. Solari, 9 M. & W. 54).
*289 In this case, one Solari had an insurance on his life in the plaintiffs’ company. He had made default in the payment óf a .premium due on the 3d of September, by which the policy lapsed. The actuary advised two of the directors of the default. One of them, “ Clift,” wrote on the policy the word “lapsed.” After the death of Solari, which happened in October next after the default, Ms wife, who had entered upon the administration of Ms estate, made a demand on the company for the amount of the policy. Three of the directors, including the two who had known of the default, and the lapsing of the policy in September previous, and the one who had made the entry of the word “ lapsed,” paid the amount. After discovering the mistake, an action was brought against the executrix to recover the money. The two directors on the trial testified that at the time of the payment, they had entirely forgotten that the policy had lapsed. The plaintiff was non-suited on the trial. The chief baron deciding that if the directors had had knowledge, or the means of knowledge, of the policy having lapsed, the plaintiffs could not recover, and their afterwards forgetting it could make no difference. But a new trial was ordered. Baron Parke saying, “ that if money be paid under the impression of the truth of a fact, which is untrue, it may, generally speaking, be recovered back, however careless the party may have been in omitting to use diligence to inquire into the fact.” In that case, the counsel for the defendants, in opposing the motion for a new trial, urged that the defendant was an executrix, that the money paid had become assets of the estate, and that if plaintiff succeeded the loss would fall upon her.
In Townsend v. Crondy, 8 C. B. N. S. 477, it was held that the mere fact that the person who paid the money had at the time of payment means of knowledge of which he neglected to avail himself, will not disentitle *290 him to recover the money back, if it was paid under a real mistake (Lucas v. Warwick, 1 Moody and Robinson R. 293; Daily v. Floyd, 12 B. R. 531; 2 Smith’s Leading Cases, edition of 1873, Marriote v. Hampton, and cases cited, marginal page 402).
There is no rule that because a party has the means of knowledge he has the knowledge itself, or that as a condition to a recovery he should have actually possessed himself of the knowledge within his reach. Nor can it be maintained that the omission by a party to do everything in the conduct of his own business, the performance of which might prevent loss to himself or others, is necessarily negligent.
But in Kingston Bank v. Eltinge (40 N. Y. 391), it was held, that “ Care and diligence are not controlling elements in the case. It is a question of fact merely. The inquiry is, were the parties mutually in error, and did they act upon such mutual mistake, not whether they ought to have so acted. If, in consequence of such mutual mistake, one party has received the property of another, he must refund, and this without reference to vigilance or negligence.” In the Union Bank of Troy v. The Sixth National Bank (43 N. Y. R. 452), it was objected by the defendants, to tho plaintiff’s right of recovery, that he had been negligent in an omission to make inquiries, and to use the means at hand for arriving at correct information of the facts, before parting with the money; but it was held in that case, that it is no defence that the mistake arose from a want of care on the part of the plaintiff (see also Canal Bank v. Bank of Albany, 1 Hill, 287).
Before taking this check from Greenleaf, on the 16th February, the defendants were as much bound to make inquiries in regard to its genuineness, as the plaintiffs were before accepting it, on the following day. The defendants had means of inquiring within its reach. They used nona And before sending it to the clearing- i *291 house, they impressed upon it the sanction of their own stamp, as an evidence of their belief in the trueness of the paper.
In such condition, it came to, and was accepted by, the plaintiffs as true. Viewed in a moral light, each party was guiltless ; in the law, the negligence of the one is no greater than that of the other, and for this reason it is inequitable in the defendant to detain the money paid by the plaintiff, under a mistake common to each.
At the close of the evidence, the defendants’ counsel asked the judge before whom the trial was had, to submit to the jury the question, whether the defendants had been injured by the laches or negligence of the plaintiffs, in notifying the defendants of the alleged mistake, and that the court refused, and the defendants excepted.
The defendants’ request assumed that there was negligence in respect to the notification. Negligence is neither to be assumed nor presumed. It is true that negligence is often a question of mingled law and fact. But, in this case, whether the plaintiffs had omitted such duties, or had failed to exercise such care and diligence as amounted to negligence, were facts to be determined by the jury. The fact that there was negligence in the plaintiffs, should have been found before they should have been called upon to consider its consequences to the defendants.
The forgery was not discovered by the plaintiffs until the first of March, when Vermilye & Co. returned the check ; immediate notice was then given to the defendants, and a demand of payment made.
The position of the defendants, if not earlier, was fixed on the 17th of February, when, through the exchanges of the clearing-house, the checks of Greenleaf on them to an amount exceeding $17,000 were paid. This took from the defendants more than .the amount of the forged paper. The plaintiffs were under a duty, *292 without doubt, to notify the defendants of the forgery as soon as it was discovered by them; and had the forgery been brought to the plaintiffs’ knowledge before the defendants parted with the credit they had given Greenleaf on the faith of thé forged check, and there had been a culpable omission to give notice in time to save them from loss, it might well be that the plaintiffs should not recover in this action.
The remedy of the defendants is against Greenleaf now, as it would have been on the 17th February, had the forgery been then discovered by the plaintiffs, and they had then refused the check ; under such circumstances, the plaintiffs would have made immediate reclamation on the defendants for the amount paid through the clearing-house, and the defendants would have proceeded against Greenleaf. This course is still open to them. Of the deposits made by Greenleaf on the 16th February, there still remains with the defendants, undrawn, a balance of $2,626.24, which has been attached, by whom, or upon what ground, it has been seized, and whether before or since the discovery and notice by plaintiffs of the forgery, does not appear. But in the view taken of this case, this attachment cannot be interposed by defendants to affect, in any way, the plaintiffs’ right of recovery, and it would be difficult to conceive how any creditor of Greenleaf could make a claim to this balance which was placed to his credit on the faith of a check which proved to be a forgery.
Upon the facts, this money still belongs to the defendants ; Greenleaf himself can make no valid claim to it, and no creditor can have a better right to the money than Greenleaf himself.
The judgment should be affirmed.