NATIONAL LIFE INSURANCE COMPANY, appellant, v. JONES *et al:*

*Payment made under mistake of fact — when it cannot be recovered back.*

In an action to recover back money paid under a mistake of fact, the circumstance that the plaintiff possessed the means of ascertaining the truth by investigation, but had negligently omitted to make such investigation, will not prevent a recovery.

The officers of a life insurance company, against which a claim upon a policy had been presented, made an investigation, from which they were led to

believe that a defense to the claim existed, upon the ground of false and fraudulent representations and concealment of the insured person as to his health, etc. Notwithstanding this belief, they paid the claim upon the grounds in part, that an unsuccessful resistance would injure the reputation of the company, and prompt payment would be a benefit to it. *Held,* that the money paid could not be recovered back, on the ground that the payment was made under a mistake of fact, and a good defense to such payment, by reason of the fraudulent representations, etc., actually existed.

A party seeking to recover back money voluntarily paid, and without any fraud or imposition on the part of the payee, on the ground that the payment was made under a mistake of fact, must, in order to recover, have believed in and acted upon a state of facts, which belief turns out to be unfounded and the supposed facts untrue. He is not authorized to rescind an agreement merely because he has changed his mind in regard to a matter of policy, or has come to a better position, so far as the facilities and probable result of a defense to the payment are concerned.

APPEAL from a judgment for the defendant dismissing the complaint at the Ontario circuit after trial by the court without a jury.

The action was brought by " The National Life Insurance Company of the United States of America," against the executor and legatees of Emma J. Mumford, deceased, to recover back $5,000 paid by said company upon a policy of insurance issued by it upon the life of Ira C. Mumford, deceased, and payable to his wife, Emma J. Mumford. The grounds upon which recovery was sought were that the policy was obtained by false and fraudulent representations, suppressions and concealments, and by fraudulent warranties in the application.

The court before whom the action was tried found these material facts:

The plaintiff on the 29th of June, 1869, executed and delivered to Emma J. Mumford the policy in question. The policy was issued upon an application containing certain printed inquiries, in answer to which Ira C. Mumford stated in substance that he had not at that time and never had any of the following diseases: apoplexy, asthma, bronchitis, consumption, spitting of blood, disease of the heart or urinary organs. That he had not had any serious illness, local disease or personal injury, and that to the best of his knowledge and belief he had not any disorder, infirmity or weakness, tending to impair his constitution. He underwent at the time an examination by the company's medical examiner, and exhibited no signs of disease.

Mumford died April 27, 1870. Notice of his death was given to the company by his wife, Emma J. Mumford, and the proofs required by the company presented.

Emma J. Mumford died June 15, 1870, leaving a will wherein she gave certain legacies, and appointed the defendant S. Judson Jones executor.

The officers of the company whose duty it was to determine upon the payment or rejection of claims for policy losses, began an investigation May 5, 1870, into the claim upon the policy mentioned. From information previously received and from business transactions had with Ira C. Mumford, they suspected that the policy had been obtained through false and fraudulent representations in regard to both the state of health of the insured at the time of making the application and previously, and they also believed that said insured had, at the time of applying for the policy, consumption or some other disease impairing his constitution, which he fraudulently concealed from them, and that he probably had used some fraudulent device in obtaining the certificate as to his health from the medical examiner.

Pending such investigation the officers of the company were advised of some of the places where Mumford had lived previous to and at the time of his death, and where his and his family's history could be traced, and were informed that he had been sick frequently and almost continually after July, 1869, "with," as stated to them, "probably consumption," and of the places where he had been sick. They consulted physicians who had attended him in regard to his diseases, and made a careful examination of the case and of the circumstances attending the procurement of the insurance of said Mumford and his death, and had the means of obtaining nearly all the evidence relating thereto.

As the result of such investigation the officers of the company believed that a defense existed to the claim upon said policy on the ground of fraudulent and false representations and concealments of the deceased as to his health, but, notwithstanding, they, on the 2d of August, 1870, paid the executor of Mrs. Mumford $5,000, as a full discharge of the claim.

The company decided to make this payment, in part, because of the evil effect which a resistance of the claim would have upon the reputation of the company in the event of an unsuccessful resist-

ance; also from some expected benefit which, in some general way, might result to the company from prompt payment.

Demand of repayment was made from the executor October 2, 1870. He had paid previously a portion of the money to the legatees named in the will of Mrs. Mumford.

Mr. Justice E. D. SMITH, before whom the action was tried, in his opinion, held the following propositions:

"A payment made under such circumstances and with such motives I think cannot be recovered back.

As a general rule, I think the proposition is a sound one, that when a claim is made against a person in good faith, and no willfully false device or pretense or representation is made to deceive or mislead him in respect to it, or to prevent his full examination and full determination in respect to its validity and his liability, and he is under no danger of person or property, is not taken at any undue disadvantage, or in any way prevented or constrained to act hastily or involuntarily in respect to it, he is bound, if he does not mean to admit and allow it, to resist it *in limine*. * * He has not and should not have the option to pay or discharge without contest, and afterward sue to recover back such payment. If he pays it under such circumstances he must be deemed to have made his election to regard and recognize it as an honest or valid claim in law, and his payment must be deemed a voluntary one." * * *

"Angell on Insurance, § 409, states the rule I think correctly, that if after the loss has been paid the insured discovers that there was fraud in the original contract or circumstances, which would have justified their resistance of the demand, they may recover it back, but if at the time they paid the money they knew, *or might upon inquiry have been informed* of the grounds upon which they could have resisted the claim, they cannot afterward recover it back, for this would open the door to infinite litigation." * * *

*Theodore Bacon* and *H. R. Shelden*, for appellants, cited Chitty on Cont. 543 (8th Am. ed.); *Kelly* v. *Solari*, 9 M. & W. 54; *McCormack* v. *Penn. Central R. R. Co.*, 49 N. Y. 311; *Lucas* v. *Worswick*, 1 Moo. & R. 293; *Bell* v. *Gardiner*, 4 Man. & G. 11; *Dails* v. *Lloyd*, 12 Ad. & El. (N. S.) 531; *Townsend* v. *Crowdy*, 8 C. B. (N. S.) 477, 493; *Duncan* v. *Berlin*, 46 N. Y. 685; *Kingston Bank* v. *Eltinge*, 40 id. 391; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Union National Bank* v. *Sixth National Bank*, 1 Lans. 13; *Boyer* v. *Pack*, 2 Den. 107; *Waite* v. *Leggett*, 8 Cow. 195.

*H. L. Comstock,* for respondents, cited *Mowatt* v. *Wright,* 1 Wend. 305; *Granger* v. *Olcott,* 1 Lans. 169; *Kelly* v. *Solari,* 9 Mees. & Wels. 54; *Mutual Life Ins. Co.* v. *Wager,* 27 Barb. 354; *Morton* v. *Ostrom,* 33 id. 256; *Clark* v. *Dutcher,* 9 Cow. 674; *Wyman* v. *Farnsworth,* 3 Barb. 369; *Brisbane* v. *Dacres,* 5 Taunt. 143; *Bilbie* v. *Lumley,* 2 East, 469; *Supervisors of Onondaga* v. *Briggs,* 2 Den. 40; *Russell* v. *Cook,* 3 Hill, 504; *Wilson* v. *Ray,* 10 Ad. & El. 82; *Milnes* v. *Duncan,* 6 B. & C. 671; Angell on Life Ins., § 409.

TALCOTT, J. The doctrine that, in an action to recover back money paid under a mistake of fact, the plaintiff's recovery would be defeated if he had possessed the means of ascertaining the truth by inquiry and investigation, but had negligently omitted to make such investigation and inquiry, though once prevailing, has long since ceased to be recognized as law by the courts at Westminster Hall. *Kelly* v. *Solari,* 9 M. & W. 54; *Dails* v. *Lloyd,* 12 Q. B. (64 E. Com. L. R.) 531; *Townsend* v. *Crowdy,* 8 C. B. (N. S.) 476, 492. In the case last cited it is said by ERLE, C. J.: " It seems from a long series of cases from *Kelly* v. *Solari* down to *Dails* v. *Lloyd,* that where a party pays money under a mistake of fact he is entitled to recover it back, although he may at the time of payment have had means of knowledge of which he has neglected to avail himself."

The former doctrine was also expressly repudiated by the court of appeals in the *Kingston Bank* v. *Eltinge,* 40 N. Y. 391, and again in *Duncan* v. *Berlin,* 46 N. Y. 685, S. C., more fully reported in 11 Abb N. S. 116.

The learned judge at the circuit was therefore in error so far as his decision was based upon the circumstance that the plaintiff had the means of ascertaining, before the payment of the money sought to be recovered, that the policy upon which the loss was paid had been originally obtained by fraud and misrepresentation. But we think the decision may well stand upon the other grounds stated by the justice and found by him as a part of the facts in the case, namely, the justice finds: " That as the result of the investigation and knowledge, the plaintiff and its said officers believed that a defense, in fact, to said claim existed on the ground of the fraudulent or false representations and concealments of the said Ira C. Mumford, as to his health and previous diseases, but thereafter, and on or about the second day of August, 1870, the plaintiff still entertain-

ing such belief, voluntarily paid to the aforesaid executor the said sum of five thousand dollars as and for a full settlement and discharge of said claim under said policy. That the plaintiff decided to and did make such payment in part because of the evil effect which a resistance of the claim would have on the reputation of the company in the event of an unsuccessful resistance, also from some expected benefit which, in some general way, might result to the company from the prompt payment, if such payment was to be made."

The principle to be derived from all the cases is, that the party seeking to recover back money voluntarily paid, and without any fraud or imposition on the part of the payee, on the ground that the payment was made under a mistake of fact must, in order to recover, have believed in and acted on the faith of a state of facts which belief turns out to have been unfounded, and the supposed facts untrue. In *Kelly* v. *Solari*, *supra*, which was an action to recover back money paid on a life policy, it is conceded that to entitle the plaintiff to recover, the money must have been paid "under the influence of a mistake, that is, upon the supposition that a specific fact is true which would entitle the other to the money," and "under the impression of the truth of a fact which is untrue," and in the case of *The Kingston Bank* v. *Eltinge*, *supra*, HUNT, J., delivering the opinion of the court of appeals, says: "The case then becomes one of a fact; was there not an error between the parties? And the determination of that fact controls the result." And again: "Care and diligence are not controlling elements in the case. It is a question of fact merely. The inquiry is, are the parties mutually in error, and did they act upon such mutual mistake, not whether they ought so to have acted."

In the case before us, the finding, which seems to be abundantly sustained by the evidence, is not that the party paying acted under the "supposition" or "impression" that the policy had been fairly obtained, but the precise contrary, and that the plaintiff, at the time of the payment, actually, not only believed, but had considerable evidence to establish the existence of the precise state of facts which it now sets up to rescind the payment.

The requirement that, in order to defeat such an action, the plaintiff must have paid with a "full knowledge of all the facts," which is the language of some of the cases, can mean nothing more than full notice of all the facts, and a confident belief in their exist-

ence; for actual, personal knowledge could rarely be attained. If the party paying has notice of and believes in the existence of the true state of facts, he has not paid under any mistake of facts, or upon the faith of any false state of facts.

The appellant's counsel seems to place great stress upon the circumstance that, on the trial of this case, evidence was developed which showed quite clearly that the belief of the plaintiff, at the time of the payment, that the policy had been fraudulently obtained, was correct, which evidence had not before been known to the plaintiff, but it seems to us this is not at all material.

The plaintiff believing that a good defense existed to the demand might be unwilling to encounter the risk of undertaking to prove it, might doubt whether it could be proved with sufficient clearness to secure a verdict, and for that reason have concluded that it was better to pay than to encounter a litigation which might prove unsuccessful.

In such case a payment is not made under a mistake of fact, but upon the ground that, notwithstanding the fact, it is for the interest of the party paying to make the payment. So, too, the finding that the payment was made not in reliance upon a false belief as to the facts, but from other motives, inclining the plaintiff to the belief that it was for its interest to assume the false state of facts to be true, and pay without further question or inquiry is a sufficient ground for sustaining the decision. If the payment be not solely in reliance upon a falsely assumed state of facts, but from mixed motives, so that the payer, while not believing the assumed state of facts, voluntarily waives all investigation or inquiry in view of, and influenced by other motives to the payment, he has not paid on the faith of a false state of facts, and thereby influenced to the payment, but upon other considerations. In the case of *Kelly* v. *Solari, supra,* Lord ABINGER, while conceding that, at the trial, he had laid down too broadly the rule as to the effect of a party having the means of knowledge, says: "There may be also cases in which, although he might, by investigation, learn the state of facts more accurately, he declines to do so, and chooses to pay the money notwithstanding; in that case there can be no doubt he is equally bound" (as though he had full knowledge). In the same case, which, as before remarked, was an action to recover back money paid as a loss upon a life policy, Baron ROLFE says: "But I agree that Mr. Platt (for defendant) has a right to go to the jury again

on two grounds: First, the jury may possibly find that the directors had not, in truth, forgotten the fact; and secondly, they may also come to the conclusion that they would not expose the office to unpopularity, and would therefore pay the money at all events; in which case I quite agree that they could not recover it back."

And in the case of *Townsend* v. *Crowdy, supra,* WILLIAMS, J., says: " Since the case of *Kelly* v. *Solari*, it has been established that it is not enough that the party had the means of learning the truth if he had chosen to make inquiry. The only limitation now is that he must not waive all inquiry."

The rule by which a party is enabled to recover back money paid' under a mistake of fact does not authorize him to rescind a payment merely because he has changed his mind in regard to a matter of policy, or because he has come to a better position, so far as the facilities and probable result of a defense are concerned, but is based upon the idea of a *bona fide* and controlling belief in the existence of given facts, under the influence of which he has been induced to make the payment. Such, according to the findings and the evidence, is not this case.

The judgment must be affirmed, with costs of appeal.

*Judgment affirmed.*