It is made the duty of the county superintendent of the poor, when any woman shall be pregnant of a child likely to be born a bastard, and to become chargeable to the county, to apply to a justice of the peace to make inquiry into the facts and circumstances of the case. (1 R.S., 642, § 5.) The justice is required, by examination of such woman on oath, and upon such other testimony as may be offered, to ascertain the father of such child, and thereupon to issue his warrant to apprehend such reputed father, and have him brought before him for the purpose of having an adjudication respecting the filiation of the child. (Id., § 6.) Upon the person so charged with being the father being brought before the justice issuing the warrant, the latter is to call to his aid another justice, and the two justices are required to proceed and make examination of the matter, and again examine the woman alleged to be pregnant, on oath, in the presence of the person charged, touching the father of such child, and hear any proofs that may be offered in relation thereto; and they are to determine who is the father. (§§ 11, 13.) If they determine that the person charged is not the father, he is to be forthwith discharged; but if they determine that he is, they are to make an order of filiation, specifying therein the sum to be paid, weekly or otherwise, by him for the support of the child; and if the mother be in indigent circumstances, they are *Page 291 
also to determine the sum to be paid by such putative father for the sustenance of such mother during her confinement and her recovery therefrom. (§ 13.)
Superintendents of the poor in any county in this State are empowered to make such compromise and arrangements with the putative father of any bastard child within their jurisdiction, relative to the support of such child, as they shall deem equitable and just; and thereupon to discharge such putative father from all liability for the support of such bastard. (Laws of 1832, ch. 26, § 2.)
There can be no doubt of the general principle that, when one pays money without any legal obligation to do so, under a mistake of fact, and without the means of ascertaining the truth, he may recover it back. The cases founded on mistake, says SAVAGE, Ch. J., in Mowatt v. Wright (1 Wend., 355), seem to rest on this principle, that if parties, believing that a certain state of things exist, come to an agreement with such belief for its basis, on discovering their mutual error they are remitted to their original rights. Error of fact takes place, says the same learned judge, either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist. The question is, whether the law, as to the payment of money under the influence of a mistake, applies to this case. I think it does. The liability of a putative father for the support of his bastard child is created wholly by statute (he not being liable at common law), and the remedy there prescribed must be pursued. The statute authorizes a compromise and arrangement with the putative father relative to the support of such child. The compromise under the statute is merely a mode of getting indemnity on the part of the county for the support of the bastard. Whether the superintendent takes a bond or a sum of money, he but indemnifies the county against an actual or impending expense; and when there has been no expense to the county, and there is to be none, against which the money was paid as an indemnity, then the money, ex equo et bono, belongs to the person paying it. The plaintiff was charged with being the *Page 292 
father of a child likely to be born a bastard, of which Louisa Hehr was alleged to be pregnant. Both the plaintiff and defendant acted upon the erroneous assumption that she was pregnant, and they compromised relative to the support of the child that, it was supposed, would be born a bastard and become chargeable to the county. It is true that this compromise and settlement was made after the arrest of the plaintiff, and after he had been charged with being the father of the child; but I do not think that, because the matter was in process of legal investigation, the plaintiff was concluded by such compromise from ever after denying the pregnancy. The fact as to who was the father of the child may have been waived by the compromise, but not the vital fact which gave it all its force and without the existence of which the superintendent had no power to act, viz., the pregnancy of Louisa Hehr. There was no disagreement or compromise between the plaintiff and the defendant as to the fact of pregnancy. They both believed and acted upon the assumption that she was pregnant, and it turns out that they were both mistaken. As there was no pregnancy, the county has not been put to any expense, and never can be, and as the plaintiff paid his money to indemnify the county under a mistake of fact, I think he was entitled to maintain this action. It has been repeatedly held, that when money was paid under a mistake which there was no ground to claim in conscience, the party may recover back.
It is urged that this action cannot be maintained against the defendant, for the reason that he had no power to pay the money back. The superintendent, in compromising with the plaintiff, was acting under a special power conferred on him by law, and the money was paid to him in the first instance to provide for the child that was expected to be born. Bastards, it is true, are supported as paupers, and the superintendent has no power to retain moneys that may come into his hands, and disburse them for the support of the poor. He must pay over such moneys to the county or into the poor fund, and then draw on the county treasurer for all necessary expenses incurred in the discharge of his duties. It did not clearly *Page 293 
appear in this case that the defendant had paid over the money to the county or into the poor fund. But if it had, it would have made no difference. I entirely concur with the learned judge who tried the cause, that, "when it was ascertained that the woman had not been pregnant, and that all parties had acted under a complete mistake of the fact, as the defendant would no longer hold the money for the original purpose, he simply held it for the plaintiff. He had then no more right to pay the money to the county, or place it in the poor fund, than he would have had to bestow it on any charitable object. If this action will lie at all, it cannot be defeated by the voluntary transfer of the money by the defendant after the cause of action had accrued."
The judgment of the Supreme Court should be affirmed.
All the judges concurring,
Judgment affirmed.