THE KINGSTON BANK, Appellant, *v.* ROELIFF ELTINGE, President of the Huguenot Bank of New Paltz, Respondent.

In an action to recover back money paid under a mistake of fact, it is no defence that the plaintiff had within his reach the means of ascertaining the truth ; or that he omitted to use vigilance and care by which the mistake would have been avoided.

Nor is it any defence to such an action, that the defendant cannot be restored to his original position, upon paying back the money.

The owner of a judgment upon which an execution has been issued and a sale of personal property made thereunder, may maintain an action to recover back the money received by the sheriff upon the sale, from one to whom it has been paid with such owner's assent, under a mistake of fact.

Accordingly, where the sheriff, having received an execution issued upon the defendant's judgment, and afterwards one upon a subsequent judgment of the plaintiff against the same party, and before the last had run out, but after the sixty days had expired as to the first, made a levy upon personal property not sufficient to satisfy both, sold it and paid over the proceeds to the defendant in satisfaction of his prior execution, with the assent of the plaintiff, neither party knowing that that execution had run out before the levy, but supposing the contrary—*Held* (DANIELS, J., *dissenting*), that the latter could recover it back from the former as money paid under a mistake of fact; and this, although either might have easily learned the truth by inquiry of the sheriff, and although the defendant's judgment had been, in consequence of this receipt of the money, canceled and discharged of record.

(Argued March 31st, 1869, and decided June 11th, 1869.)

APPEAL from a judgment of the General Term of the third district, affirming a judgment for the defendant entered upon the decision of the court, on a trial without a jury.

The action was for money paid under a mistake of fact.

The following are the facts as found by the judge:

On the 30th of January, 1854, the Huguenot Bank duly recovered three several judgments in the Supreme Court, viz: One against Nicholas Elmendorf, William Masten and Marius Schoonmaker, for $2,659.29 ; one against N. Elmendorf and M. Schoonmaker, $2,661.00 ; and the other against Nicholas Elmendorf alone, $1,031.69 ; amounting in all to $6,351.98 ; which judgments were duly docketed in Ulster county clerk's office on the same day, and executions issued thereon and delivered to the sheriff of said county on the said 30th of January, 1854, at 1 o'clock, P. M.

Nicholas Elmendorf was the owner of a steamboat called the Alida, worth $19,000 ; and of other personal property worth $1,143.99 ; also of real estate in said county worth $18,147.88, and the judgment debtor, Wm. Masten, owned a propeller worth $1,000.

No liens or incumbrances then existed against the said property of the judgment debtors, excepting four judgments docketed in said clerk's office, viz: in favor of other parties against said Elmendorf and others, amounting in the aggregate to about $10,000 ; on which no executions had then been issued to the sheriff. Before the executions had run out on the said judgments in favor of the Huguenot Bank in the sheriff's hands, the real and personal property of the judgment debtor, Elmendorf, was amply sufficient to pay said judgments and all prior liens.

Subsequently and prior to March 28, 1854, other judgments in favor of various parties, were recovered against Elmendorf, and on the 25th of March, 1854, the Kingston Bank recovered three several judgments against Elmendorf, Lockwood and Schoonmaker, amounting in the aggregate to about $15,000, and thereafter judgments to a large amount were perfected by various parties against Elmendorf.

The sheriff levied on the Alida between the first and the middle of May, 1854, and on the propeller, the property of William Masten, the middle of March, 1854.

On the 17th of July, 1854, the steamboat Alida, the property of Elmendorf, was sold by the sheriff for $19,000 (and

the propeller was sold at the same time for $1,000), to John Van Vechten, for which sum of $19,000, Van Vechten, by the consent of the Kingston Bank, gave his note to the sheriff.

The real estate of Elmendorf was sold by the sheriff, under executions, April 10, 1855, and brought $18,171.88.

On the 20th day of July, 1854, Van Vechten paid all the judgments in favor of the defendant, the Huguenot Bank, and the same were at his request then satisfied and canceled of record ; these judgments were paid and canceled of record by the consent of the Kingston Bank.

These payments were made from the proceeds of the sale of the Alida, under the mistake of fact that the Alida had been levied upon under the executions upon the defendant's judgments, whereas no such levy had been made ; but those executions had run out in the sheriff's hands prior to any levy on the Alida.   They were so paid without any fault or want of care of the defendant, and without the defendants obtaining any advantage thereby, as the judgments of the defendant were entirely safe and secure by the real estate of Elmendorf on which they were a lien prior to plaintiff's judgments, but by being satisfied by the payments before mentioned, the defendant's lien on the real estate was lost without fault of the defendant, and if this plaintiff recover, the defendant will probably lose its judgments.   There was no fraud in the conduct of the plaintiff or the defendant, but the plaintiff had the means of easily ascertaining the facts as to the levy prior to the payment of defendant's judgments.

As a conclusion of law, he found that the plaintiff had no cause of action.

The judgment was affirmed by the General Term.

*Samuel Hand*, for the appellant.

*Jacob I. Hardenburg*, for the respondent.

HUNT. Ch. J.   The judgment in this case was rendered upon a finding of facts by the judge who tried the cause,

HAND — VOL. I.    50

without a jury. This judgment was affirmed by the General Term. In such case the Code provides, that the findings of fact, are conclusive upon us. Both parties in their briefs proceed upon the basis of the facts thus found, and the respondent expressly states, that the findings of the judge are fully sustained by the testimony. It is not competent, therefore, for the respondent to insist, as he does in his second point, that "no part of the moneys paid to the Huguenot Bank, were moneys realized out of the sale of the Alida. It was all money of N. Elmendorf, the principal debtor, and upon it the Kingston Bank had no lien or claim whatever." The judge trying the cause has found, that "the judgments of the defendants were paid from the proceeds of the sale of the Alida, under the mistake of fact that the Alida had been levied upon under the executions of the defendant's judgments, whereas no such levy had been made." This finding, as the respondent admits, and it cannot be denied, is sustained by the evidence. As a fact it is conclusive upon us here. The case, then, stands thus. The defendants having the earliest judgments against Nicholas Elmendorf and others, issued three executions upon their judgments in January, 1854. In March, 1854, the judgments in favor of the plaintiffs were recovered, and executions issued upon them to the sheriff holding the prior executions. During the life of the latter executions, but after the lien of the former had expired, by lapse of time, the steamboat Alida was levied upon, under the executions in the sheriff's hands, and sold for $19,000. Both parties supposed that the boat had been levied upon by the first executions, as well as by the later ones; the purchaser paid the first executions and the judgments were satisfied of record. This was done by the consent of the plaintiffs. The plaintiffs' executions in consequence thereof, remained unpaid. Upon discovering the error, to wit, that the first executions had expired, and were not a lien upon the boat or its proceeds, the plaintiff demands of the defendant the money thus erroneously paid, and bring this action for its recovery.

The money thus received by the defendant, was the plaintiffs' money. That it did not belong to the defendant, follows necessarily. The avails of the property of a judgment debtor, when sold upon execution, are by law to be paid to the creditors upon whose execution it is sold. Their judgments and executions are thereby satisfied and discharged. Such proceeds on the other hand, do not belong to a judgment creditor, whose execution has expired by lapse of time, and is not, therefore, a lien upon the property. Neither is such judgment impaired or affected by such sale. It may be immediately enforced by another execution upon any property, real or personal, that the debtor may possess. (*Gardinier* v. *Tubbs*, 21 Wend., 169, 171; *McChain* v. *Duffy*, 2 Duer, 645; *Van Winkle* v. *Udall*, 1 Hill, 559; *People* v. *Hopson*, 1 Denio, 574; *Ostrander* v. *Walter*, 2 Hill, 329.)

The defendants have received the money, which should have been paid to the plaintiffs, by their assent it is true, but which assent was based upon a mistake of fact. The principles of law will not permit the defendants to retain this money, unless there is something in the case to take it out of the general rule. The authorities to this point are numerous. (*Barr* v. *Veeder*, 3 Wend., 412; *Wheadon* v. *Olds*, 20 Wend., 174; *The Bank of Utica* v. *Van Gieson*, 18 Johns. R., 485; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Bank of Commerce* v. *Union Bank*, 3 Coms., 237.)

So far as can be gathered from the statements of the judge trying the cause, and the opinion of the court below, their judgment in favor of the defendants, was based first upon the idea that, by the exercise of proper diligence, the plaintiffs might have learned that the defendants' executions had expired, and thus have avoided the error; and second, that by the discharge of their judgments, the defendants had lost their lien upon the real estate of their judgment debtor, and if compelled to refund, would in fact, lose their debt. I will consider each of these positions.

As to the first proposition, that the plaintiff had the means of learning the true state of the case. It cannot be denied

that either party might have made inquiry, and would probably have learned the actual facts. There is no reason to suppose that the sheriff would have refused an explanation of the order and lien of the executions in his hands, if he had been called upon for that purpose. This course, however, was open to either party, and there is no more negligence in failing to obtain the knowledge, by one party, than the other. The defendants were equally bound with the plaintiffs to possess the knowledge, and if the want of it is a ground of complaint, are equally censurable with the plaintiffs for not possessing it. In *The Canal Bank* v. *The Bank of Albany* (*sup.*), the court say: "The conduct of both parties was *bona fide*, and the negligence or rather misfortune of both the same. It was the duty, or more properly, a measure of prudence in each to have inquired into the forgery, which both omitted. But this raises no preference at law or equity in favor of the defendants, but against them. They have obtained the plaintiffs' money without consideration, not as a gift, but under a mistake. For the very reason that the parties are equally innocent, the plaintiffs have the right to recover." (Page 290.) The same rule is laid down in *The Bank of Commerce* v. *The Union Bank* (*supra*).

Care and diligence are not controlling elements in the case. It is a question of fact, merely. The inquiry is, are the parties mutually in error, and did they act upon such mutual mistake, not whether they ought so to have acted. If, in consequence of such mutual mistake, one party has received the property of the other, he must refund, and this without reference to vigilance or negligence. On a sale and purchase of real estate, the rule and the principle are different. It is a case of a bargain in which the law requires the exercise of care and attention. A party cannot then allege himself to be ignorant of a fact, of which he was put upon the inquiry, and of which he could have obtained a knowledge by reasonable diligence. In cases of bargains and sales, the rule is applicable, *vigilantibus non dormientibus leges subveniunt.*" Such was the case cited of *Taylor* v. *Fleet* (4 Barb. R., 95),

and of which there are many instances in the books.  But where there is no matter of contract, no bargain or sale, there is no call for the exercise of astuteness.  The case then becomes one of fact.  Was there or not an error between the parties?  And the determination of that fact controls the result.  Where this expression of the want of care and attention is used in reference to cases of simple mistakes of fact, by which one has thus received the money of another, and that it is thus used in many cases cannot be denied, the expressions have not been duly considered.  In support of this view, I refer to *Townsend* v. *Crowdy* (8 Com. B. [N. S.], 476, 492).  A had agreed with B to purchase his share of a partnership business, for a given sum, subject to diminution, if a moiety of the profits for three years should be less than a certain amount.  Having made a partial investigation of the accounts, and believing that the profits had reached the amount named, A paid the sum in full.  Six months afterwards, a more accurate estimate having been made, it was discovered that the profits were considerably less than the estimated amount.  Held, that the payment having been made under a mistake of fact, A was entitled to recover back from B the sum paid in excess.  In ordering judgment upon the case stated, ERLE, Ch. J., said: "I am of the opinion that our judgment in this case should be for the plaintiff.  *  * It seems, from a long series of cases from *Kelly* v. *Solari* (9 M. & W., 54), down to *Dails* v. *Lloyd* (12 Q. B., 531 ; 64 E. C. L), that where a party pays money under a mistake of fact, he is entitled to recover it back, although he may, at the time of the payment, have had means of knowledge, of which he has neglected to avail himself."  WILLIAMS, J., said: "I am entirely of the same opinion.  *  * Since the case of *Kelly* v. *Solari*, it has been established that it is not enough, that the party had the means of learning the truth, if he had chosen to make inquiry.  The only limitation now is, that he must not waive all inquiry."  WILLES, J., concurred.  BYLES, J., said: "I am of the same opinion.  *  * All the three courts have held that the right to recover back

money so paid, is not fettered by the condition suggested, that there shall not only be absence of knowledge, but also absence of the means of knowledge of the facts."

In *Kelly* v. *Solari*, above referred to (9 M. and W., 54), the plaintiff represented a life assurance company, and brought the action to recover from Madame Solari, the sum paid to her on a life policy of £1,000 in favor of her deceased husband. The deceased having neglected to pay his quarterly premium in September, the directors of the company in November following, wrote upon the policy the word "lapsed." M. Solari died in October, and in the February following, the defendant proved her husband's will, demanded the payment of the policy, and received the amount less a sum deducted for payment before maturity. The directors testified that at the time of making the payment, they had forgotten that the policy had been lapsed. At the trial the lord chief baron expressed his opinion, that if the directors had had knowledge, or the means of knowledge, of the policy having lapsed, the plaintiff could not recover, and that their afterwards forgetting it, would make no difference. He directed a nonsuit reserving leave to the plaintiff to move for a verdict for the amount claimed. On such motion being made, Lord Abinger, C. B., said: "I think the plaintiff ought to have had the opportunity of taking the opinion of the jury whether in reality the directors had knowledge of the facts, and, therefore, that there should be a new trial and not a verdict for the plaintiff; although I am now prepared to say that I laid down the rule too broadly at the trial, as to the effect of their having had means of knowledge." Parke, B., concurred, saying, among other things: " The position that a person so paying, is precluded from recovering by laches, in not availing himself of the means of knowledge in his power, seems from the cases cited to have been founded on the dictum of Mr. Justice Bayley, in *Milner* v. *Duncan* (6 B. & C., 671), and with all respect to that authority, I do not think it can be sustained in point of law. If, indeed, the money is intentionally paid without

reference to the truth or falsehood of the fact, the plaintiff meaning to waive all inquiry into it, and that the person receiving shall have the money at all events, whether the fact be true or false, the latter is certainly entitled to claim it; but if it is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however careless the party paying, may have been in omitting to use due diligence to inquire into the fact."

The case of *Dails* v. *Lloyd*, referred to in the above opinion, is reported also in 12 Ad. & Ells., N. S., 531 (64 Eng. C. L. R.) These cases show that the question of care and dili gence does not arise in an action like the present.

The next proposition of the respondents is, that by the discharge of their judgments, they have lost their lien upon the real estate of their judgment debtors, and if compelled to refund would lose their debt. To state it in another form, they insist that the claim against them cannot be maintained, unless they can be restored to their original position, and secured from the intervention of other liens and purchases. This they say cannot now be done, citing *Crozier* v. *Acker* (7 Paige, 137). That was the case of a mistake of law. The chancellor says : " If this court can relieve against a mistake in law in any case, where the defendant has been guilty of no fraud, which is very doubtful, it must be in a case in which the defendant has lost nothing by the mistake, and where the parties can be restored to the same situation, in which they were at the time the mistake happened."

The application of this principle to the present case would substantially destroy the rule, that money paid in mistake of facts can be recovered by the payer from the receiver. If the facts could be so arranged, that there would be no loss to either party, there would be nothing to contend about, and no such actions would be brought. It is only where the retention or restoration of the money involves a loss that the parties are anxious about it. It is an ordinary result of the transaction, that the party receiving has incurred liabilities or paid money which he would not

have done, except for the receipt of the money. I find no case, however, in which this has been held to relieve him from the performance of his duty. In the present case, the one party or the other, upon the facts found, will lose his debt. By canceling their judgment, the respondents will have lost an available security. By failing to receive the amounts due to them upon their subsisting executions, the appellants will have lost their debt. One party or the other being compelled to lose, the question is, which shall it be. The answer given by the authorities is, that the party having the legal right must prevail. In the *Canal Bank* v. *Bank of Albany* (1 Hill, 287), which was an action by one bank to recover from the other the amount of a draft paid to it upon a forged indorsement of the name of the payee, the plaintiff recovered as for money paid by mistake, and it was held no defence to show that the defendant had collected the money as the agent of another bank in the city of New York, and had in good faith and without notice, paid over the money to its principal. Here a loss was inevitable to the defendant or its principal, and it was impossible to restore them to the position of the holder of an unmatured and unprotected draft. They were held liable nevertheless.

In *Bank of Commerce* v. *Union Bank* (3 Coms., 230), the same principle is laid down and in the same manner. The Union Bank had paid to its New Orleans correspondent, the money received from the plaintiff.

In *Rheel* v. *Hicks* (25 N. Y., 289), a complaint had been made against the plaintiff that he was the father of a bastard child of which one Louisa Hepe was pregnant, and upon the oath of the said Louisa. The plaintiff was arrested, and compromised the matter with the superintendent of the poor by paying him fifty dollars in consideration of a full settlement and release for the child's support. It turned out that the complainant was not pregnant with a child by any one, and that she was not delivered of a child at all. The plaintiff brought his action against the defendant to recover back the money paid, and recovered. This court also held that

the fact that he had paid over the money to the county did not alter the case, although it was his duty so to pay over all moneys received for the support of bastards.

Neither of the propositions on which the judgment of the Supreme Court is supposed to be based can be maintained. There is nothing to except this case from the general principles applicable to its class, and, upon the facts found, the judgment should have been for the plaintiff.

The Supreme Court could readily vacate the satisfaction of the judgments and restore the defendants to their former position, so far as the judgment debtors are concerned. Should there have been *bona fide* purchases in the mean time, the case would be more complicated, and we are not called upon to say what would be the result. In any event, I think this consideration cannot prevent the plaintiffs from recovering the moneys justly due to them. (*Adams* v. *Smith*, 5 Cow., 280; *Barker* v. *Bissinger*, 14 N. Y., 270.)

The judgment should be reversed and a new trial granted.

DANIELS, J., dissenting. The money which formed the subject of the present controversy, was derived from a sale of the steamboat Alida, made under executions issued upon judgments recovered by the plaintiff against her owner. The purchaser at the sale, by the consent of the plaintiff, made and delivered his note to the sheriff for the amount of his bid. And when the money in dispute was paid, it was paid by the purchaser upon judgments recovered against the same defendant in favor of the Huguenot Bank. At that time it was supposed by that bank, and also by the plaintiff, that the sale had in fact been made under the executions issued upon the judgments of the Huguenot Bank, and that consequently that bank had the prior right to receive the money. Under that supposition the plaintiff consented that the money should be paid upon the judgments recovered by the Huguenot Bank, and that they should be canceled of record. This proved to be a mistake, for the executions of the Huguenot Bank had expired before the levy upon the.

steamboat was made. At the time when the money was paid, the judgments of the Huguenot Bank were liens upon real estate of sufficient value to pay and satisfy them. This was afterwards sold under other judgments recovered against the debtor, and the proceeds applied in payment of them. The question, therefore, arises, as one of the parties must be subjected to the loss of the money in controversy, upon whom should that loss in justice and equity, be imposed? No positive wrong can be attributed to either of them. For they each acted under the mistaken assumption of the existence of an important fact, concerning which each was equally bound to inquire. And the means of knowledge of its actual existence were equally accessible to them both.

The consequences of a recovery by the plaintiff, will be precisely the same to the defendant, as those arising out of the maintenance of the defendant's defence, will be to the plaintiff. If the plaintiff shall succeed, it will leave the defendant's judgments to that extent unpaid, but incapable of being restored as liens upon the debtor's property. While the success of the defendant will leave the plaintiff's judgments standing against the same debtors, divested of the means of payment which the levy and sale under them had supplied them with. For while the levy continued and when it was followed by the sale, the plaintiff's judgments were *pro tanto* paid, but the payment was not an absolute satisfaction or discharge. It was still subject to the contingency that the judgments would be revived against the debtors in case actual payment was prevented, without any fault of the creditor or of the sheriff who was acting in its behalf. In this case no such fault was attributable to either. For by the mistake of the parties the money which was realized from the sale of the property, was applied in payment of other debts which its owner was equally liable to pay. No complaint, therefore, can be made by him, for he has had the full benefit of the property sold, by the application of its proceeds in the payment of his debts. And under those circumstances he could not avail himself of the technical

and temporary payment made by means of the levy and sale which was afterwards defeated by the mistaken action of his creditors, without in any manner increasing his liabilities, for the purpose of preventing the future collection of the plaintiff's judgments. (*People* v. *Hodgson*, 1 Denio, 574, 578; *Peck* v. *Tiffany*, 2 Com., 451, 456). The equities, therefore, were entirely equal between the parties to this action.

It was, however, insisted by the learned counsel for the plaintiff, that his client enjoyed the legal right, and that it should prevail for that reason. In this the counsel was in error, for until the money was actually paid over, the creditor had no legal title to it. The note which was taken by the sheriff upon the sale, was owned by him for the benefit, however, of the creditor who should prove to be legally entitled to receive its proceeds. But until it, or the proceeds derived from it, were delivered over to the creditor, the latter acquired no legal title to either. As neither was ever delivered to the plaintiff, but the proceeds were paid to the defendant with the plaintiffs' consent, the latter can, in no just or proper sense, be said to own the money in dispute. The most that can be affirmed in its favor is that it was entitled to become the owner, but relinquished its right to do so in favor of the defendant. And this united the legal title with the equities then created by the cancelation of the defendant's judgments in favor of the latter, which in equity would constitute a sufficient answer to the plaintiffs' action. For it is an established principle of that jurisprudence, that the legal title shall prevail in all transactions brought within its cognizance, where the equities prove to stand upon an equality.

The recoveries which were had in the cases relied upon by the plaintiffs' counsel were all sustained by that principle, for the evidence showed that the moneys which the defendants were required by the judgments to refund, were owned by the plaintiffs when they were received by the defendants. The legal title, as well as the equitable right, united in support

of the demands made by the plaintiffs; and in addition to that, they stood precisely in the same relation to the persons who had respectively received the moneys from them, and for that reason could maintain similar, or other adequate actions or proceedings for their own reimbursement. (*Canal Bank* v. *Bank of Albany*, 1 Hill, 287, 294; *Bank of Commerce* v. *Union Bank*, 3 Com., 230, 237; *Rheel* v. *Hicks*, 25 N. Y., 289.) Neither of these elements exist in the plaintiffs' favor in the present case, and for that reason its action to recover the money received by the defendant in consequence of the mistake does not derive any support from their authority.

This action is founded upon the equitable consideration that the defendant has received the plaintiffs' money under circumstances rendering it unjust and inequitable for it to retain it. Wherever that is shown to be the case the action should be sustained; but where, as in the present case, the money received by the defendant was not the property of the plaintiff, and was not detained against equity and good conscience, neither justice nor precedent will sustain the action brought for its recovery. In cases of this decription it has long been held, and justly so, too, that the defendant "may claim every equitable allowance; in short, he may defend himself by everything which shows that the plaintiff *ex aequo et bono*, is not entitled to the whole of his demand, or any part of it." (*Eddy* v. *Smith*, 13 Wend., 488, 490; *Wright* v. *Butler*, 6 id., 284, 290; *Buel* v. *Boughton*, 2 Denio, 91.)

And it has, therefore, been held that the action for the recovery of money paid by mistake should not be so far extended as to allow it to be maintained where it will deprive the defendant of a right. (*Rathbone* v. *Stocking*, 2 Barb., 135, 145; *Moyer* v. *Shoemaker*, 5 Barb., 319, 322; *Barber* v. *Cary*, 11 Barb., 549, 551–2.) And this qualification of the general rule clearly includes the present case.

In the case of *McDonald* v. *Todd* (1 Gant's Cases, 17), the action was brought to recover money received by the defend-

ant upon a judgment recovered by him under circumstances quite similar to those presented by the present case ; and it was maintained solely upon the ground that the defendants' attorney had fraudulently represented the lien of the judgment on which the payment was made, to be prior to that of the plaintiffs. GIBSON, J., who delivered the opinion of the court held that the defendant could have retained the money if it had not been for the fraud perpetrated by his attorney. (Id. 19.)

There is no legal ground upon which a recovery by the plaintiff could be properly or justly sustained ; the judgment should, therefore, be affirmed.

All the judges, except DANIELS, J., concurring with HUNT, Ch. J., for reversal upon the grounds stated in his opinion.

Judgment reversed and new trial ordered.