THE MASONIC LIFE ASSOCIATION OF WESTERN NEW YORK, Respondent, *v.* SUSAN A. CRANDALL, Appellant, Impleaded with Others.

*Mistake of fact — payment to a wife of insurance moneys in the belief that her husband, the insured, is dead — recovery thereof — consideration.*

The wife, a beneficiary under a policy of insurance upon the life of one Crandall, who was supposed to have been drowned, recovered from the insurance company the amount of the policy. Subsequently, a rumor obtaining currency that Crandall was alive, she deposited the avails of the insurance policy with a third party in trust to hold them for three years, and if the rumors proved to be true, to turn them over to the insurance company; if not, to her. These avails were, at the end of the three years, returned to her. Thereafter fresh rumors arose and she made a second deposit in trust of such avails, and during the period of the second deposit it was shown that Crandall was alive.

*Held*, that, as the money was paid to her under a mistake of fact, she was bound to pay over to the insurance company the proceeds of the policy;

That her legal obligations were in no way changed by reason of such deposits in trust having been made;

That the deposits were made upon a sufficient consideration, as she thereby escaped the danger of being sued and of publicity in this matter.

APPEAL by the defendant, Susan A. Crandall, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 1st day of April, 1895, upon the decision of the court rendered after a trial at the Erie Special Term.

*Arthur W. Hickman* and *George W. Cothran*, for the appellant.

*Charles A. Pooley*, for the respondent.

Judgment affirmed, with costs, on the opinion of SPRING, J., delivered at Special Term.

All concurred.

The following is the opinion of SPRING, J.:

SPRING, J.:

Bryant B. Crandall, in 1881, was insured in plaintiff's association for the sum of $2,000, his wife, the defendant, Susan A. Crandall, being named as the beneficiary in the policy or certificate of insurance.

In 1886 the insured was supposed to have been drowned in the Niagara river. What was then identified as his remains were buried, and the usual proofs of death conformable to the conditions of the policy were furnished, and thereupon the said $2,000 were paid to the said beneficiary by plaintiff. Crandall, at the time of his supposed demise, held other insurance policies on his life, aggregating, exclusive of the one issued by the plaintiff, the sum of $6,500, in each of which his wife was the designated beneficiary, and payment was made by each of the companies issuing such policies upon proofs showing the death of the insured.

In 1887 rumors were rife that Crandall was alive. An agreement was thereupon entered into between Mrs. Crandall and these several insurance companies, whereby the property she had purchased with the avails of this insurance money and the money still held by her, and a bond and mortgage, which was an investment made from the avails of these policies, were paid or transferred to Charles F. Bishop, as trustee. By the provisions of this agreement Mr. Bishop was to hold the money and property in this fiduciary capacity for three years, during which period, if these companies established by satisfactory proof that Crandall was alive, then the property was to be converted into money and distributed among them in proportion to their several interests. If, however, they failed to establish that fact within the stipulated period, then the money and property were to be paid and transferred to Mrs. Crandall and the trust terminated.

During the existence of this trust she was to be permitted to occupy the dwelling house constructed with the insurance money

received by her, and was to be paid interest at the rate of six per cent per annum on the residue of the property of which Mr. Bishop was the custodian.

Under this arrangement she assigned the bond and mortgage, executed a conveyance of the dwelling house lot, and paid the money held by her to the chosen trustee. This property amounted to about $7,900, the remainder of the avails of the insurance policies having been used by her.

After the three years had elapsed, the trustee reconveyed the premises, paid the money and reassigned the bond and mortgage to her, as no satisfactory proof had been adduced to prove Crandall was alive.

In 1892 the officers of the plaintiff received word that Crandall was under arrest at Los Angeles in California. Mr. Tiffany, the secretary of plaintiff, went to Mrs. Crandall's house and urged her to make another agreement transferring the money and property again to Mr. Bishop, as trustee, until it could be ascertained definitely if the man so apprehended was in fact the husband of the defendant. Mrs. Crandall on the following day by appointment went to Mr. Tiffany's office. The agreement was there executed and consummated by the conveyance of the house and lot, and of an undivided interest in a land syndicate. At that time she had deposited to her credit in the Erie County Savings Bank $3,101.69, and in the Western Savings Bank $2,961.82, which sums were derived from the said insurance on the life of her husband. Within a few days it was positively known that Crandall was the person apprehended in Los Angeles. He was brought to Buffalo and identified as the husband of the defendant. Mrs. Crandall thereupon forbade the savings banks paying over this money, and this action, which is brought for the purpose of compelling the savings banks to pay over to the plaintiff the amount due to it, on account of the moneys paid to Mrs. Crandall under the policy issued by the plaintiff on the life of her husband, or to compel such banks to pay over the sums in question to the trustee, is the result.

A bare statement of these facts is all sufficient to show how utterly without merit is Mrs. Crandall's defense in this case. Her right to the insurance money did not attach until her husband died, and with the fact undisputed that he was alive when the proofs of

death were made, and has been ever since, she cannot evade the repayment of these moneys however much it may be hedged about by agreements that were made to give an opportunity to arrive at the truth. She was confronted with the statement that her husband was alive. Like any conscientious woman, she wished no imputation resting on her that she was the recipient of money to which she had not the semblance of title. She accordingly entered into the first agreement with Bishop as trustee. The rights of the parties to this fund were in no sense changed by the making of this contract. Without it she would be liable to refund the money, in case Crandall were alive, for his death was the essential prerequisite to her right to it. Under the agreement the same condition inhered. It preserved the property intact to the insurers in case Crandall should be found, and it protected her in the event there was no foundation for the rumors he was in the flesh. After the lapse of three years, had a period of time passed before repayment to her, during which Crandall had been discovered to be alive, that would have been an irresistible defense to her action to compel repayment. The infirmity in her case would have been that Crandall was not dead. If repayment had been made to her she could not have successfully resisted recovery by these companies predicated upon the fact that her husband was alive. The first agreement did not in any manner assume to change the relations of the parties to this fund. The insurers did not agree to relinquish all their rights in the money after the expiration of the stipulated period. The burden would have been on them at any time to establish affirmatively Crandall was alive, but beyond that, the one salient query lying at the threshold of any litigation over this fund must be, was Crandall alive at the time the proofs of death were furnished?

Two years after the termination of the first agreement, rumors again came to the insurers that Crandall was alive; that he had been apprehended at Los Angeles, California, and had been identified by acquaintances, and the second agreement was entered into. Mrs. Crandall claims she executed this agreement under duress. The testimony does not impress me favorably with that idea. The agreement is in substance like its predecessor. The same motives existed for its execution. The meeting at which it was executed was prearranged for the specific purpose of making it. She went

to Mr. Tiffany's office voluntarily. The paper was read over to her, and she comprehended its terms.

But, as I view the relations of the parties to this fund, the second agreement was of no significance, so far as affecting the real rights of the parties. After it was demonstrated Crandall was alive the wife's title to the money paid her was divested, and the refunding of the money could be compelled. The agreement making Bishop its custodian did not alter this vital principle in this peculiar case.

This money was paid on the hypothesis Crandall was dead, and if this was untrue a mistake of fact existed and the proposition is elementary that repayment to the insurers could be compelled. (Pom. Eq. Juris. § 852 *et seq.;* Story's Eq. Juris., par. 140; Willard's Eq. Juris. 69; *Rheel* v. *Hicks,* 25 N. Y. 289; *Kingston Bank* v. *Eltinge, Pres.,* etc., 40 id. 391; *Mayer* v. *Mayor,* 63 id. 455.)

As Story says, in paragraph 140: "The general rule is, that an act done, or contract made, under a mistake or ignorance of a material fact, is voidable and relievable in equity."

But the counsel for defendant strenuously urges there was no consideration for the second agreement. It is not of the slightest moment. The form of the action even is not affected by that question, for if the defendant were the custodian of this property instead of Bishop the action would not necessarily be one at law, but a suit in equity would be the more probable, as the property is not all in money, but in a bond and mortgage, and in real estate, and the relief sought would be the vesting of the title to this property in the insurers. If she voluntarily paid this money to the bank to await the issue of an investigation to ascertain whether or not Crandall was alive, the action would be maintainable against the custodian of the fund, and it could be in equity to restrain the payment to her.

Again, the interposition of a court of equity is usually brought to compel the repayment of money paid under a mistake of fact. Even if the agreement is without consideration, it cannot materially affect the parties here, for they acted upon it as a binding agreement; they have recognized its validity, and it is only an unimportant side issue in a controversy, the pith of which is the existence or non-existence of Crandall. The vice in the defendant's claim is in a lower stratum than this agreement.

But there was a good consideration entering into this agreement. The defendant was in imminent danger of being sued for the recovery of this money or property. It had been paid under a mistake of fact if her husband still lived. She was without a defense if that fact existed. She wished to avert litigation and further publicity of these distressing details, hence the agreement was as much for her benefit as for that of the insurers.

Again, defendant's counsel urges the well-recognized principle that the first agreement was the adjustment of a disputed demand and its termination vested the property irrevocably in Mrs. Crandall. Such was not the scope of that agreement. The title to the property was not altered by this contract. Its preservation was its aim and purpose, and the insurers did not upon its expiration relinquish their right of recovery, if Crandall should be found to be alive.

Mrs. Crandall cannot complain of any maltreatment from these companies. She was paid the full sum stipulated in the policies. She has depleted the *corpus* of this fund materially. She has been paid the accruing interest upon it for nearly eight years, and during all of this period the insured husband was alive.

Judgment will be entered in favor of the plaintiff for the relief demanded in the complaint.