SEARS v. GRAND LODGE OF ANCIENT ORDER OF UNITED WORKMEN OF NEW YORK.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

MISTAKE AS DEFENSE—COMPROMISE.

Nine years after the disappearance of insured, the claim of his beneficiary that he was dead, and that she should be paid the insurance, being resisted by the insurance company, action was commenced to enforce it, whereupon a compromise and settlement were effected, resulting in an agreement of the company to pay the beneficiary $666 (a third of the insurance) "promptly," and to pay the other two-thirds to a trustee; the same to be returned by him to the company if, before a certain time, it be discovered that insured was alive, "it being agreed that said $666 is not to be returned in any event." Held, that the defense of mistake was available against an action by the beneficiary for the $666; it appearing before payment thereof that insured was alive, and being established on the trial, by concession of the parties, that the agreement was entered into in the belief that insured was dead.

Ward, J., dissenting.

Appeal from special term, Onondaga county.

Action by George H. Sears against the Grand Lodge of the Ancient Order of United Workmen of the State of New York. From a judgment for plaintiff on the decision of the court (a jury having been waived), defendant appeals. Reversed.

On the 13th day of July, 1886, the defendant issued to one Charles R. Baumgras a certificate of membership, by the terms of which he was entitled to all the privileges of the order, including the right to participate in its beneficiary fund, to the extent of $2,000, which sum was made payable at his death to his wife, Mary Baumgras. In the month of September following, Charles R.

Baumgras suddenly and mysteriously disappeared from his home. His wife, hearing nothing from her husband for several years after his disappearance, insisted that he was dead, and that the defendant should pay the amount named in the certificate. This claim was resisted by the defendant, and thereupon, and in the month of September, 1895, an action was commenced in the supreme court by Mrs. Baumgras to enforce the payment of her claim. The defendant appeared and answered in the action, denying the death of Baumgras and its liability under the certificate. Thereafter, and while that action was at issue, a compromise and settlement were effected between the parties, which resulted in a written agreement, by the terms of which the sum of $666 was to be paid to Mrs. Baumgras "promptly," and the further sum of $1,334 was to be paid to a trustee therein named, and retained by him until July 1, 1897, upon the condition that in case the defendant should discover at any time before the date mentioned that Charles R. Baumgras was alive, and should produce proper and reasonable proof of that fact, and fix his identity with certainty, so that his wife could verify the fact, the sum last mentioned should be returned to the defendant, but otherwise it was to be paid over to Mrs. Baumgras. The agreement further provided "that said $666 is not to be returned in any event." Within a fortnight after this agreement was entered into, and before any of the moneys therein mentioned had been paid over by the defendant either to Mrs. Baumgras or to the trustee named, it was ascertained to the satisfaction of all parties that Charles R. Baumgras was living. Mrs. Baumgras nevertheless insisted that she was entitled to the $666, and, the defendant refusing to pay the same, she transferred her claim to the plaintiff, who thereupon brought this action to recover the amount thereof.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Raymond Cobb, for appellant.

George H. Sears, in pro. per.

ADAMS, J. It is an elementary principle that a court of equity will grant such relief, either affirmative or defensive, as the circumstances of the case may require, when it is made to appear that a contract has been entered into upon the mistaken assumption of a material fact. Such an assumption arises when some fact really exists which is unknown, or some fact is supposed to exist which really does not exist. Mowatt v. Wright, 1 Wend. 355–360. And all forms of error which fall under either of these conditions are mistakes of fact, which furnish an occasion for equitable relief. Pom. Eq. Jur. §§ 852–854. We do not suppose that the law of the case as thus stated will be controverted; and, if the contract in question were simply an undertaking upon the part of the defendant to pay a sum of money, it probably would not be contended that the plaintiff could maintain his action, inasmuch as upon the trial thereof it was conceded in open court, and the learned trial justice thereafter found in accordance with such concession, that the contract between these parties was the result of a mutual mistake of fact; it having been entered into upon the assumption by each of them that Charles R. Baumgras was dead, whereas in fact he was alive. It is insisted, however, that the case is not to be governed by the principles to which we have adverted, for the reason that the agreement upon which it is founded is one of compromise and settlement; that the defense to the claim which was thereby settled was a questionable or doubtful one; that such settlement was based upon uncertain and contingent events; and that, in short, it was

speculative in its character, and was entered into after a calculation of the chances, and upon the assumption of all the risks incurred. It becomes necessary, therefore, to consider it from the point of view just indicated, and in doing so the fact may as well be recognized that the agreement in question does represent the settlement of a disputed claim.    For that reason it is one which the courts would naturally be inclined to favor and sustain as far as possible; but, nevertheless, if it is one which resulted from the misapprehension of a material fact, we see no reason why it should not be governed by precisely the same principles of law and equity as would be applicable if it were a simple contract for the payment of money.    For it must be borne in mind that there was no compromise between the parties as to the effect of Baumgras' death.    They both supposed and acted upon the assumption that he was dead, and it now appears that in this respect they were both in error.    If, under these circumstances, the defendant had paid over the $2,000, or any portion of that sum, without being sued, unquestionably it could have recovered the same back, upon discovering the mistake, because, in good conscience, the plaintiff would not be entitled to the money.    Bank v. Eltinge, 40 N. Y. 391; Association v. Crandall, 9 App. Div. 400, 41 N. Y. Supp. 497.    And for the same reason the fact that the money was paid, or agreed to be paid, in settlement of a litigation, should give her no better title to the same, where the settlement was induced by erroneous assumptions.    In a case which 'came before the privy council of England as recently as 1863, the question which we are considering was most elaborately discussed by Lord Kingsdown, who thus stated the rule applicable to compromises founded upon mistakes of fact:

"If the error relied on be in a matter of fact, and the fact be one not included in the compromise, and of such a character that it must be considered the determining motive of either of the parties entering into the agreement, its existence is regarded as a condition implied, though not expressed; and then, if the fact fail, the foundation of the agreement fails. This seems to be the meaning of the language used by Toullier (book 3, tit. 3, § 1, art. 42, and following articles). The instances which he puts are, if a compromise be found in the genuineness of instruments which turn out to be forged, or if a suit which it is the object of a compromise to determine turns out to have been already decided in favor of one of the parties, or if a compromise be founded upon a will which turns out to have been revoked by another will, of which the parties are ignorant," the foundation of the agreement fails. Trigge v. Lavallée, 15 Moore, P. C. 270–298.

This case, it is fair to state, arose in Lower Canada.    The questions which it involved were consequently determined by the French law; but in the concluding paragraph of the judgment delivered by Lord Kingsdown, and from which the above quotation is taken, he observes that, while the case had been decided by the French law, the principles which had been applied to its determination had doubtless been adopted into the law of England.    That the same may be said as respects the law of this state, is, we think, not to be doubted. A similar question to the one here presented arose in a case where a person charged with the paternity of an unborn bastard, after having been arrested on proceedings under the statute, entered into a settlement with a superintendent of the poor, upon the mistaken

48 N.Y.S.—36

assumption that he was the father of the child; and it was held by the court of appeals of this state that he could recover back the moneys paid in satisfaction of the compromise, upon its appearing that the supposed mother was not in fact pregnant. Rheel v. Hicks, 25 N. Y. 289. This, together with the other authorities which have been cited, are ample, we think, to sustain the proposition that, generally speaking, a compromise which is founded upon a mutual mistake of fact will not be upheld unless it is made to appear that it was speculative in its character, and that the mistake was one of the chances assumed. It is insisted that such was clearly the intention of the parties to the contract in question, and in support of this position we are asked to consider and give effect to the provision thereof which contains these words, viz.: "It being agreed that said $666 is not to be returned in any event." It is not to be denied that there is some reason for claiming that, taken in connection with its context, the language quoted does indicate the existence of some doubt in the minds of the parties as to whether Baumgras was dead or alive, as well as an intention upon the part of the defendant that, whatever developed on further investigation, the sum named was to be paid absolutely and unqualifiedly to the plaintiff's assignor. But the fact must not be overlooked that it was established upon the trial, by express concession of the parties, that the entire agreement was entered into upon the belief that Charles R. Baumgras was dead; and this concession, in our opinion, characterizes the agreement in such a manner as to relieve it of all ambiguity. In this view of the case, the clause above referred to may be regarded as the fruit of a mistaken belief, with as much propriety as any other portion of the contract; and we therefore have the right to conclude that the obligation with reference to the $666 would not have been assumed had not this erroneous belief been entertained. In other words, the foundation of whatever risk was assumed by the defendant was the same mistake that was responsible for the contract in its entirety, and "the same principle which cures one mistake will cure the other." Calkins v. Griswold, 11 Hun, 208; Wheadon v. Olds, 20 Wend. 174; Roberts v. Ellwood (N. Y. App.) 22 N. E. 453. We conclude, therefore, that the judgment appealed from was unwarranted by the facts of the case, and that it should consequently be reversed, and a new trial granted.

Judgment reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except WARD, J., who dissents.

WARD, J. I dissent from the conclusions of the majority of the court. Mary Baumgras was the beneficiary in a certificate of membership issued to Charles R. Baumgras, her husband, on the 13th of July, 1886. The certificate provided for the payment by the defendant of $2,000 upon the husband's death. In September, 1886, Charles R. Baumgras departed from his home and family, and nothing was heard of him; and in September, 1895 (nine years after his disappearance), an action was commenced in the supreme court by his wife to collect the amount of the certificate, upon the ground that Baumgras was

dead. The defendant defended the action, and put in issue the fact
of his death; and finally the action was compromised by the execution
between the parties of an agreement in writing made the 20th day of
March, 1896, which recites:

"Whereas, said Charles R. Baumgras has disappeared, and the party of the
second part claims that he is dead; whereas, an action has been brought by
said party of the second part [Mary] against the party of the first part [the
defendant] in the supreme court of Onondaga county on or about the 25th day
of September, 1895, to recover upon said certificate; and whereas, a settlement
and adjustment of the said action has been agreed upon between the parties
hereto: It is hereby agreed that the said action is to be discontinued and fully
settled, without costs to either party against the other. It is further agreed
that said party of the first part shall pay to the party of the second part the
sum of $666, in cash, promptly."

It was further agreed that the balance due upon the certificate
($1,334) should be left with a trustee, with certain provisions as to
what should be done with the money, and the agreement continues:

"It is further agreed that in case the party of the first part shall discover at
any time between now and the first day of July, 1897, and shall produce proper
and reasonable proof, that Charles R. Baumgras is alive, and shall fix his
identity with certainty, and shall locate just where he is, so that the party of
the second part may verify the fact that he is alive, then, in that case and event,
said fund * * * shall be returned by the said [trustee] to the party of the
first part * * *; it being agreed that said $666.00 is not to be returned in any
event."

A short time after this agreement was entered into, and before any
money had been paid over by the defendant under the contract, it was
ascertained that Charles R. Baumgras was living; and the defendant
refused to pay his wife the $666 which she was to receive, under the
contract, in any event. Whereupon this action was brought to recover
this amount by her assignee, the respondent here, and a recovery was
had in the trial court; and the question is here presented whether the
contract thus made could be enforced, or whether the fact of the re-
appearance of Baumgras destroyed the right of his wife to recover the
$666, upon the ground that the contract was entered into under a
mutual mistake of facts between the parties to it. The question of the
existence of the husband was the disputed question in the first action.
He had been gone so long that the law presumed him dead, the family
and friends not having heard from him. Had the action been pressed
to a conclusion, the wife would have recovered the whole amount. At
least, such were the probabilities. The defendant, realizing that, con-
sented to a compromise and settlement of the action, and had the bene-
fit of it. There was ample consideration for the contract. It was
not a mistake of fact. It was the case of a settlement of a disputed
claim. It was to get rid of a lawsuit. One party claimed that the man
was dead. The other claimed that he was alive. The money in con-
troversy in that action depended upon the solution of that question,
and the parties, without either of them surrendering their convictions
upon the subject, settled the case; the plaintiff to have one-third, and
the defendant to retain two-thirds, of the amount in dispute,—a fair,
equitable adjustment, under the circumstances, without fraud or mis-
take. The parties contracted with reference to the contingency of
Baumgras' being alive. Here was no mistake of fact. The cases that

relieve under these circumstances, and that have been cited, are cases. where there was a mutual mistake of fact; that is, both parties supposed a fact to exist when it did not. But this is a case, as I have said, where a lawsuit was pending, and the contingency of Baumgras' being alive was considered, discounted, and settled; and, upon familiar principles, such an arrangement should be sustained. Stress is laid by the appellant upon a finding of the trial court that both the parties, at the time of entering into the contract in question, believed the said Charles R. Baumgras to be dead; but the trial court further found, in that connection, "that, notwithstanding such belief, said parties, and especially the defendant, entered into and made the contract in question, which recognized, contemplated, and provided for the possibility of said Baumgras' being alive." I do not think that the belief of these parties, one way or the other, was material. As I have said, they contracted, not with reference to their belief, but with reference to the contingencies of the situation. These views lead to the conclusion that the judgment appealed from should be affirmed, with costs.