NATHAN A. SEAGLE, as Executor, etc., of ANNIE J. DADE, Deceased, Respondent, *v.* KATHERINE E. BARRETO, Appellant, Impleaded with JOHN D. BARRETO, Defendant.

Second Department, January 23, 1920.

Contract — action on theory of money had and received to recover moneys stolen by husband and expended by wife after same were deposited in her account — failure to show that wife had knowledge of husband's dishonesty — when wife not personally liable.

Where a husband who was accustomed to deposit money in a bank account standing in the name of his wife for her to expend in running their household, deposited in said account certain funds which he had stolen from an estate, and the wife, having no knowledge whatever of her husband's dishonesty, expended the money for household expenses or returned various portions of it to her husband at his request, she cannot five years thereafter be held personally liable to the estate on the theory of money had and received for the stolen moneys which she unknowingly expended.

PUTNAM, J., and JENKS, P. J., dissent, with opinion.

APPEAL by the defendant, Katherine E. Barreto, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of Westchester on the 26th day of February, 1919, upon the decision of the court after a trial at the Westchester Trial Term before the court, a jury having been waived.

In *Seagle* v. *Barreto* (183 App. Div. 941) this court affirmed a judgment against the defendant John D. Barreto, who is also a defendant in the case at bar, and who is the husband of the appellant Katherine E. Barreto. It appears that prior to February, 1912, Barreto, who was the agent of plaintiff's testatrix, Annie J. Dade of New York city, appropriated to his own use some $51,000 proceeds of sale of real estate of said Dade, investing the money in New York city bonds. During the lifetime of Miss Dade, on April 29, 1913, Barreto delivered two of the bonds so appropriated to the First National Bank of Portchester for sale for his account. The bonds were sold and the proceeds, $1,887.05, were on April 30, 1913, deposited by Barreto in the bank to the credit of the defendant Katherine E. Barreto.

This action was not commenced until June 19, 1918. There is no charge made that Mrs. Barreto knew anything about her husband's dishonesty or that she had any notice of his wrongdoing. She had a deposit account with the First National Bank in Portchester from the year 1892, when she went to live in Portchester, and when her husband deposited the $1,887.05 in that account in April, 1913, it was in an account which had been in existence for some twenty years, and the trial judge so found. Mrs. Barreto explained that the account was a household account, all the money deposited came from her husband, and she drew checks upon it to procure money for household expenses. She usually drew out $100 a month for ordinary household expenses, but her husband deposited more than that, because insurance, taxes and other expenses were at times paid by her check. Also at times her husband had her make out checks for cash given to him for what use she did not know. She never deposited any money of her own, she had no private income or property except the house in which the family lived in Portchester, the title to which was taken in her name; she bought clothing for herself, two daughters and a son, although the latter had been self-supporting for a number of years. She employed one maid.

Barreto paid his own personal expenses. Long before this action was commenced in 1918, the $1,887.05 deposited April 30, 1913, had been withdrawn from the bank and expended either for household expenses, food and clothing, or returned to Barreto. The judge refused, to find, at defendant's request, that she did not know the source of the receipt of the deposit of $1,887.05 deposited in her account, but this does not mean, nor is it claimed, that she had any knowledge of Barreto's misappropriation of the bonds. The language of the request was incorrect, because, of course, she knew the money was deposited to her account by her husband.

There is evidence concerning the absence of returned or canceled checks, but the action was not commenced for five years after the deposit of the $1,887.05 in suit, and Mrs. Barreto explained that she destroyed these checks and vouchers once a year at house-cleaning time.

The trial judge found that the proceeds of the sale of the bonds were the property of the estate represented by plaintiff, that the defendant, appellant, received and retained such proceeds to her own benefit and that plaintiff was entitled to recover from her the sum so deposited to her account, with interest from the date of deposit.

*William A. Davidson* [*Max Perlman* with him on the brief], for the appellant.

*Clinton T. Taylor*, for the respondent.

KELLY, J.:

There is nothing in the record to show any knowledge on the part of appellant of her husband's wrongdoing. The account was in reality his account. It was his money, disbursed by her for his account without notice or intimation that any one else had claim to it. And now in 1919 she is saddled personally with a judgment for $2,629.32, on the theory of money had and received. I am persuaded that this is an unjust result. The action, while it is brought at common law, depends upon general principles of equity. (*Chapman* v. *Forbes*, 123 N. Y. 532, 536.) This was not a case brought by the party defrauded against the principal who has defrauded him, such as *Town of Bleecker* v. *Balje* (138 App. Div. 706),

*Kingston Bank* v. *Eltinge* (40 N. Y. 391), or *Mulligan* v. *Harlam* (46 Misc. Rep. 571), cited by the learned trial justice and by the counsel for respondent. These were cases brought against the principal, or in the last case against a defendant chargeable with notice of the existing facts. The learned judge says he has been unable to find any case presenting this precise question, and, " If she still had the money, she would be clearly liable to pay it over to the plaintiff." With this conclusion I agree. She would have no better title to the money than her husband, and he would have no right to the money as against the plaintiff. But the judge says, " I know of no principle of law or equity which could permit its expenditure by her for her own benefit, however innocent, and thus prevent her liability," and in this I am constrained to differ with him.

If a bank receives deposits to the credit of the account of a depositor, and pays out such deposits in good faith on the depositor's checks, can it be held liable in an action for money had and received, to a stranger from whom the depositor wrongfully obtained the money? If notice is given, it is another thing. In such case if the bank pays out the money notwithstanding the notice, undoubtedly the action would lie. Or if the money remained on deposit an action might be maintained to recover it. But where it is paid out without notice of any claim, or knowledge of any wrongdoing or defect in the title, it would be unjust to say that five years thereafter a stranger might come in and oblige the bank to pay it a second time. Stolen funds can be traced until they come into the hands of a *bona fide* holder for value, when the title is lost, for money has no earmarks. But when the funds come into the hands of an agent, bailee or depository, who either returns them to the principal or lays them out for the principal's benefit without notice, it would seem that no liability should attach. Under any other rule business could not be safely transacted. It is not necessary to find that the appellant wife was at all times acting as the agent of her husband in disbursing this money, although I think this was the fact. She asserted that she had no interest in the account save to disburse it for her household expenses, etc., and to give Barreto such amounts as he requested. He made most of the deposits,

she would receive notice from the bank that such a deposit was made, enter it on her check stub, and continued drawing against it. But suppose the money was given to her by him to use for her own individual purposes. I do not see how any different rule would prevail. I think the plaintiff was obliged to show notice and demand while she had the money in her possession to justify recovery against her personally.

The cases cited by the learned counsel for the respondent are not opposed to this conclusion. *Empire State Surety Co. v. Nelson* (141 App. Div. 850) was a case where the defendant received payment of a personal debt from a special guardian, out of the trust money in the special guardian's hands, " *knowing at the time he received such payment that it was made from guardianship funds.*" In *Roberts* v. *Ely* (113 N. Y. 128) the complaint was dismissed on the ground that it was barred by the Statute of Limitations. But that case would be no authority for the plaintiff in any event because Ely, the defendant, *had notice of the equitable right of the plaintiff.* The court in discussing the nature of the action, said (p. 131): " No privity of contract between the parties is required, except that which results from the circumstances." But the Court of Appeals in no way intimates that an innocent bailee or custodian of the money was responsible where it had been paid out in good faith without notice of the claim of the plaintiff. The court said: " The action for money had and received to the use of another is the form in which courts of common law enforce the equitable obligation. The scope of this remedy has been gradually extended to embrace many cases which were originally cognizable only in courts of equity. Whenever one person *has in his possession* money *which he cannot conscientiously retain* [italics mine] from another, the latter may recover it in this form of action, subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons." It is suggested that the appellant wife did not take the funds as a purchaser for value and that mere absence of knowledge by a volunteer is not enough; that to give good title the receiver must be both innocent and a purchaser for value.

(Pom. Eq. Juris. [4th ed.] § 1080.) But upon the facts in this case, it is not exact to describe the wife as a mere " volunteer." A good wife gives value for every dollar her husband gives her. She performed her duty as a wife and mother faithfully. The moneys were expended in good faith for food and clothing and maintenance of the household or returned to the husband on his request. I think that, at least, she is in as good position as a bank of deposit. Married women have their own burdens, but if it is to be held that they are responsible in money damages and possibly to arrest under execution against the person years after the happening of the event because they have received money from their husbands, in good faith, and disbursed it by returning it to him or for household expenses and food and clothing for the family, there is a new and serious responsibility placed upon them. To follow up an innocent woman for the misdeeds of a bad husband may be justifiable in some cases, but in the case at bar when she parted with the money five years before she ever heard of plaintiff's claim, I can perceive no equity in plaintiff's claim against her.

The judgment should be reversed, with costs, and the complaint dismissed, with costs. This court reverses so much of the 10th finding of fact as finds that the proceeds of sale of the bonds have been retained by the defendant Katherine E. Barreto, also the 12th and 13th findings of fact and all of the conclusions of law of the trial justice. And this court finds the facts set forth in defendant's requests to find numbered 6, 9, 10, 15, 16, 18. This court also makes additional findings of fact as follows: A. That after the deposit of $1,887.05 on April 30, 1913, the defendant Katherine E. Barreto drew checks against her deposit in the First National Bank of Portchester for household expenses, clothing, taxes, insurance premiums, etc., and for cash paid to her husband from time to time at his request and for no other purpose. B. That all of said deposit of $1,887.05 except the sum of $52.06 had been withdrawn from said bank and paid out by said Katherine E. Barreto before August 1, 1913, for the purposes set forth in finding A. C. That such withdrawals and payments were made by said defendant Katherine E. Barreto in good faith and in regular course without any

notice that the plaintiff or his testator Annie J. Dade had any claim to said moneys, or that they were the proceeds of any misappropriation by John D. Barreto, the husband of said Katherine E. Barreto. D. That this action was not commenced until June 19, 1918, at which time the defendant Katherine E. Barreto had no money or property in her possession derived from the conversion or misappropriation by John D. Barreto of the two bonds referred to in the complaint; and the following conclusion of law: A. That the plaintiff has failed to make out a case against the defendant and that defendant is entitled to judgment dismissing the complaint upon the merits, with costs, entry of which judgment is hereby directed.

MILLS, J., concurs; BLACKMAR, J., concurs in separate memorandum; PUTNAM, J., reads for affirmance, with whom JENKS, P. J., concurs.

BLACKMAR, J. (concurring):

I agree with Mr. Justice KELLY that this judgment cannot stand; but with some expressions in the opinion I cannot agree. I do not think that the relationship of husband and wife, or the fact that the wife was giving her services to the husband, furnished a consideration which would enable her to hold, as against the true owner, stolen funds received from her husband even if she had no knowledge of the tainted source. If, however, moneys were drawn out of her bank account for the husband's benefit, the wife is not liable. The case is the same as if stolen funds were placed in the hands of any other agent or bailee, who, without knowledge that the property was stolen, disposed of it in accordance with the directions of the principal or bailor.

PUTNAM, J. (dissenting):

In this case the appellant's bank account on April 30, 1913, received $1,887.05 proceeds of the two bonds which the husband had sold and converted. Here the trust moneys have been traced into this bank account of the appellant, who is the wrongdoer's wife. At that time appellant's bank balance was $40.76. Between April 30 and July 9, 1913, she had by various

checks thereon drawn out sums so as to leave to her credit only $40.76.

The court found that appellant paid no consideration for such deposit in her bank account, and that she received and retained said proceeds for her own benefit. Such a holder cannot be considered a *bona fide* purchaser for valuable consideration and without notice. As against the beneficiary of a trust *ex maleficio* mere absence of knowledge is not a sufficient defense. To get a prevailing title, such receiver, however innocent, must be a purchaser for value. If a depositary like a bank (for example) pay such funds out to third persons, these payments make a consideration. But if the volunteer uses the proceeds for herself or family, can her own appropriation be a defense? It is not a case of earmarking funds. It is the simpler question of showing a right higher than that of the true owner of the securities, whose proceeds have been thus abstracted. Hence I would affirm.

JENKS, P. J., concurs.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order, with new findings, on notice.