## N. Y. SUPERIOR COURT.

THE NATIONAL BANK OF COMMERCE, respondent, agt. THE NATIONAL MECHANICS' BANKING ASSOCIATION, appellant.

Forgery in bank check, mutual mistake, upon whom loss should fall—viewed in a moral light, each party was guiltless; in the law the negligence of the one is no greater than that of the other, and for this reason it is inequitable for the defendant to detain the money paid by the plaintiffs under a mistake common to each.

*General Term, December* 15, 1873.
MONELL, SEDGWICK *and* VAN VORST, *JJ.*

APPEAL by defendants from a judgment entered upon the verdict of a jury under the direction of the judge before whom the case was tried, and from an order denying a new trial.

The action was brought to recover the sum of $14,949.25, claimed to have been paid by plaintiffs to defendant under a mistake of facts.

The case shows that Vermilye and Co. were dealers with plaintiffs, depositing money with them and drawing checks against the same. On the 15th day of February, 1870, they drew a check, No. 101, on plaintiffs, for $56.75. The check was made payable to the order of A. J. Greenleaf, to whom or to whose use it was delivered by Vermilye & Co. on the day on which it was drawn. The check was taken on the same day to the plaintiffs, by a person purporting to be Greenleaf, the payee, and presented to be certified to Thomas B. Adriance, who was the receiving teller, but who, on that day, acted as paying teller, in the temporary absence of the paying teller. Adriance certified the check. The plaintiffs kept

Nat. Bank of Commerce agt. Nat. Mechanics' Banking Association.

a record of certified checks, and a book for the purpose, and in this book Adriance entered the check for $56.75 in question, as certified on that day. Greenleaf, the payee of the check, was a dealer with the defendant. He had been introduced to the cashier as a banker and broker, by a customer of the bank, and left with the defendants his card, with the number of his office thereon as 70 Broadway. He opened an account with the bank on the 1st of February, 1870, and from that time down to the 16th day of February, 1870, he had made divers deposits, amounting, in the aggregate, to over $56,000, and upon which he had, from time to time, drawn checks, so that on the sixteenth of February, when his account was balanced, there was standing to his credit only $1.49. On the day last named, and after his account had been balanced, Greenleaf deposited with the defendants the check of Vermilye & Co., which had been certified on the fifteenth of February by Adriance, but which, after its certification had been fraudulently changed in its date from the fifteenth to the sixteenth of February, and altered in its amount from $56.75 to $15,006. The check was received by the defendants as genuine, and credited to Greenleaf's account at the sum of $15,006. Greenleaf afterwards, on the same day, further deposited with the defendants the sum of $5,600 (his last deposit), and on the same day drew out of the bank, by his checks, the sum of $17,981.25, leaving an apparent balance in his favor on that day of $2,626.24. The defendants having no knowledge of the forgery in the body of the check, deposited the same in the clearing-house on the morning of the seventeenth day of February, when the same was paid to the defendants by the plaintiffs as a check for $15,006, through the exchanges in the clearing-house, in the ordinary way in which the accounts of banks are there adjusted, and the same actually came to the plaintiff's banking-house on the morning of the seventeenth of February, with other vouchers.

The check came from the clearing-house to William W. Sherman, who was the regular paying teller of plaintiff's

bank, who was absent from the bank on the fifteenth, the day the check was certified. It was brought to Sherman by the check clerk as not being entered as a certified check on the certificate book. Sherman looked at the book and saw no entry of the check. He made no inquiries of Vermilye & Co. nor of anybody in the bank, but, knowing the signature of Adriance, and supposing the check to be genuine and regularly certified, and its entry on the sixteenth accidentally omitted, he entered the same upon the book as a check certified, of the sixteenth of February, for $15,006, and the same was charged to the account of Vermilye & Co.

In this condition the affair remained until the twenty-fourth of February, when the account of Vermilye & Co. with the plaintiffs was written up, and the vouchers, including the check of $15,006, were returned to Vermilye & Co. On the first of March Vermilye & Co., having in the mean time examined the vouchers, called upon the plaintiffs, produced the check, and notified the bank that the check had been altered, after drawn by them, from $56.75 to $15,006, whereupon the plaintiffs addressed to the defendants a letter in these words:

"NATIONAL BANK OF COMMERCE,
"NEW YORK, *March* 1, 1870.

" M. CHANDLER, Esq.,
" *Cashier National Mechanics' Banking Association:*
" DEAR SIR.—I inclose herewith check of Vermilye & Co. upon this bank, No. 101, to order of A. J. Greenleaf, purporting to be for fifteen thousand and six dollars ($15,006), received for that amount through the Clearing-house Exchange from your bank, as per your slip, also inclosed herewith, which check we have this day learned has been altered from $56.75, the amount for which it was drawn, and certified by us, and I therefore hereby claim and request repayment to us of the difference of $14,949.25.

Yours, very respectfully,
"H. F. VAIL,
" *Cashier.*"

This was the first actual notice the defendants had of the forgery. The defendants' cashier immediately sent a clerk to 70 Broadway to make inquiries for Greenleaf, but he was not to be found there. The office was closed and no person on hand. The balance in the hands of the defendants, $2,626.24, has since the seventeenth day of February been attached.

At the close of the testimony the defendants' counsel requested the court to submit to the jury the question whether the defendants had been injured by the laches or negligence of the plaintiffs in notifying the defendants of the alleged mistake. The court refused and the defendants excepted.

The court directed a verdict for plaintiffs for the sum of $14,949.25, with interest, being the difference between the amount for which the check was originally drawn and certified and the altered amount; defendant excepted to such direction. Defendant moved for a new trial, which was denied.

JAMES EMOTT, *for appellants.*
BENJAMIN D. SILLIMAN, *for respondents.*

*By the Court,* VAN VORST, *J.*—When the check, in the altered condition in which it had been taken by the defendants as genuine, came back to the counter of the plaintiffs' bank on the seventeenth day of February, it was there also received as genuine, and its payment through the exchanges at the clearing-house was adopted and ratified, and, as a valid check, it was charged to the account of Vermilye & Co., the drawers of the same.

The alteration being in the body of the instrument, and not in the signature of their customer, which they were presumed to know, they are not by the act of recognition and payment of it as valid, under an honest belief that it was so, disentitled from establishing that the instrument was a forgery, or from recovering back the money paid (*Bank of Commerce* agt. *Union Bank*, 3 *Coms.*, 230).

The plaintiffs on the seventeenth day of February were deceived by the fraudulent alteration of the check, as the defendants themselves have been on the sixteenth, and the recognition by each bank of the check as valid was made under a clear mistake of facts.

No effect can be given to the certification of the check on the fifteenth of February by Adriance, the clerk of the plaintiffs, other than that the signature was genuine, and that the check was good for $56.75, the amount for which it was drawn (*Farmers' and Mechanics' Bank* agt. *Butchers' and Drovers' Bank*, 16 *N. Y.*, 125). And the money paid by plaintiffs over and above that sum they are entitled to recover back from the defendants, unless there be such facts and circumstances peculiar to this case as would justify the defendants according to equity and conscience to detain it from the plaintiffs. The defendants claim that the plaintiffs have been guilty of laches, which has resulted in loss to them, and that this negligence of plaintiffs should defeat a recovery. It was urged on the argument by defendants' counsel that it was negligence in the plaintiffs not to have entered the check, when certified, by its number, in addition to its date and amount, that the entry of the number would have aided in detecting the forgery; and further, that when the check came back to them on the seventeenth of February they did not make sufficient inquiry in regard to its genuineness before accepting it as a true instrument. The defendants urged substantially that the plaintiffs could and should have detected the forgery on the seventeenth of February, and should have immediately given notice thereof.

The evidence on the trial was to the effect that it was not customary to enter certified checks on the books by their number, but that memoranda of the dates and amounts were sufficient for the purposes for which the book was kept.

The question as to whether or not the omission of plaintiffs in this respect was negligence was not submitted to the jury, nor was any request made that it should be; and it cannot be

said, as matter of law, that the plaintiffs were bound to make such entry, and that a failure to do so is negligence. But that the plaintiffs did not make all the inquiry and examination on the return of the check which the defendants now demand, affords no good reason why the plaintiffs should not recover in this action.

It was, without doubt, formerly the rule that if a party pays money under a mistake of fact, and no laches is imputable to him in respect of his omitting to avail himself of the means of knowledge within his power, he might recover back the money (*Milner* agt. *Duncan*, 6 *B. & C.*, 671). But the limitation of the rule with respect to laches in such cases has been modified (*Kelly* agt. *Solari*, 9 *M. & W.*, 54). In this case Solari had an insurance on his life in the plaintiff's company. He had made default in the payment of a premium due on the third of September, by which the policy lapsed. The actuary advised two of the directors of the default; one of them—Clift—wrote on the policy the word "lapsed." After the death of Solari, which happened in October next after the default, his wife, who had entered upon the administration of his estate, made a demand on the company for the amount of the policy. Three of the directors, including the two who had known of the default and the lapsing of the policy in September previous, and the one who had made the entry of the word "lapsed," paid the amount. After discovering the mistake an action was brought against the executrix to recover the money. The two directors on the trial testified that at the time of the payment they had entirely forgotten that the policy had lapsed. The plaintiff was non-suited on the trial, the chief baron deciding that if the directors had had knowledge or the means of knowledge of the policy having lapsed, the plaintiff could not recover, and their afterward forgetting it could make no difference. But a new trial was ordered, baron PARKE saying "that if money be paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, how-

ever careless the party may have been in omitting to use diligence to inquire into the fact." In that case the counsel for the defendant, in opposing the motion for a new trial, urged that the defendant was an executrix, that the money paid had become assets of the estate, and that if plaintiff succeeded the loss would fall upon her.

In *Townsend* agt. *Crowdy* (8 *C. B. N. S.*, 477) it was held that the mere fact that the person who paid the money had, at the time of payment, means of knowledge, of which he neglected to avail himself, will not disentitle him to recover the money back, if it was paid under a real mistake (*Lucas* agt. *Worsack*, 1 *Moody & Robinson R.*, 293; *Dailey* agt. *Lloyd*, 12 *Q. B. R.*, 531; 2 *Smith's Leading Cases, edition of* 1873; *Mannot* agt. *Hampton, and cases cited, marginal page* 402).

There is no rule that, because a party has the means of knowledge, he has the knowledge itself, or that, as a condition to recovery, he should have actually possessed himself of the knowledge within his reach.

Nor can it be maintained that the omission by a party to do everything in the conduct of his own business, the performance of which might prevent loss to himself or others, is necessarily negligent.

But in *Kingston Bank* agt. *Eltinge* (40 *N. Y.*, 391) it was held that " care and diligence are not controlling elements in the case. It is a question of fact merely. The inquiry is: Were the parties mutually in error, and did they act upon such mutual mistake? not whether they ought to have so acted. If in consequence of such mutual mistake one party has received the property of the other, he must refund, and this without reference to negligence or vigilance."

In the *Union Bank of Troy* agt. *The Sixth National Bank* (43 *N. Y. R.*) it was objected by the defendants to the plaintiff's right of recovery that he had been negligent in an omission to make inquiries, and to use the means at hand for arriving at correct information of the facts before parting

with the money; but it was held, in that case, that it is no defense that the mistake arose from a want of care on the part of the plaintiff (*see also Canal Bank* agt. *Bank of Albany*, 1 *Hill*, 287).

Before taking this check from Greenleaf, on the sixteenth of February, the defendants were as much bound to make inquiries, in regard to its genuineness, as the plaintiffs were, before accepting it, on the following day.

The defendants had means of inquiry within their reach. They used none. And, before sending it to the clearing-house, they impressed upon it the sanction of their own stamp, as an evidence of their belief in the trueness of the paper. In such condition it came to and was accepted by the plaintiffs as true.

At the close of the evidence, the defendants' counsel asked the judge before whom the trial was had to submit to the jury the question whether the defendants had been injured by the laches or negligence of the plaintiffs in notifying the defendants of the alleged mistake, and that the court refused and the defendants excepted.

The defendants' request assumed that there was negligence in respect to the notification. Negligence is neither to be assumed nor presumed. It is true that negligence is often a question of mingled law and fact. But in this case, whether the plaintiffs had omitted such duties, or had failed to exercise such care and diligence as amounted to negligence, were facts to be determined by the jury. The fact that there was negligence in the plaintiffs should have been found before the jury should have been called upon to consider its consequences to the defendants.

The forgery was not discovered by the plaintiffs until the first of March, when Vermilye & Co. returned the check; immediate notice was then given to the defendants, and a demand of payment made.

The position of the defendants, if not earlier, was fixed on the seventeenth of February, when, through the exchanges of

the clearing-house, the checks of Greenleaf on them, to an amount exceeding $17,000, were paid. This took from the defendants more than the amount of the forged paper.

The plaintiffs were under a duty, without doubt, to notify the defendants of the forgery as soon as it was discovered by them; and had the forgery been brought to the plaintiffs' knowledge before the defendants parted with the credit they had given Greenleaf on the faith of the forged check, and there had been a culpable omission to give notice in time to save them from loss, it might well be that the plaintiffs should not recover in this action.

The remedy of the defendants is against Greenleaf now, as it would have been on the seventeenth of February had the forgery been then discovered by the plaintiffs, and they had then refused the check. Under such circumstances, the plaintiffs would have made immediate reclamation on the defendants for the amount paid through the clearing-house, and the defendants would have proceeded against Greenleaf. This course is still open to them.

Of the deposits made by Greenleaf on the sixteenth of February, there still remains with the defendants undrawn, a balance of $2,626.24, which has been attached. By whom or upon what ground it has been seized, and whether before or since the discovery and notice by plaintiffs of the forgery, does not appear. But in the view taken of this case, this attachment cannot be interposed by the defendants to affect, in any way, the plaintiffs' right of recovery, and it would be difficult to conceive how any creditor of Greenleaf could make a claim to this balance, which was placed to his credit on the faith of a check which proved to be a forgery. Upon the facts, this money still belongs to the defendants. Greenleaf, himself, can make no valid claim to it, and no creditor can have a better right to the money than Greenleaf himself.

The judgment should be affirmed.

So ordered.