(65 App. Div. 84.)

### WARD v. WORK et al.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

**1. PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—AGENT'S LIABILITY — EVIDENCE.**

W. in good faith engaged in numerous transactions with a firm conducting a fraudulent business, of borrowing money on contracts which did not exist. W. also invested money belonging to his father, and received large profits in return, and paid $65,800 to his father as his share. The firm failed, and it was discovered that the alleged business was a fraud; and W., to prevent threatened criminal prosecutions, settled the accounts, paying out more money than he ever received from the firm. W. made an assignment for the benefit of his creditors, and his assignee brought this action against the executors of W.'s deceased father to recover the money paid by W. to his father. W.'s transactions with the firm were had through an agent, and the vouchers received by him were payable to bearer, and there was no evidence that the firm was ignorant of W.'s agency for his father. *Held* insufficient to authorize a recovery for plaintiff on the basis that W., on the discovery of the fact that the firm's business was fraudulent, was entitled to recover back from his father the payments made to him; the contention being that W., as the undisclosed agent for his father, was liable to restore to the firm or its creditors the funds received.

**2. SAME—PRINCIPAL'S LIABILITY—SATISFACTION BY AGENT—REIMBURSEMENT—EVIDENCE.**

Neither could the action be maintained on the theory that W. by his settlements had released his father's estate from claims for which it was liable, as it appeared that the payments were made to avoid threatened criminal prosecutions against himself, and there was no evidence that the payments were made on account of the money received by his father.

Appeal from judgment on report of referee.

Action by Walworth Ward against James Henry Work and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

The plaintiff, as assignee of James Henry Work, seeks to recover in this action from the executors of John C. Work, deceased, the sum of $65,800, which was paid to the latter between the 2d of May, 1883, and the 29th of April, 1884, on the ground "that the said money was paid under a mutual mistake of fact, and that the consideration thereof has wholly failed, and that the defendants, executors, etc., cannot in equity and good conscience retain the same as against said James Henry Work and his said assignee." The facts, as stated in detail in the opinion of the learned referee, are as follows: "Prior to May 6, 1884, a firm of Grant & Ward, in the city of New York, nominally bankers, pretended to be doing a very extensive and lucrative business in advancing money to contractors by the means of short loans in anticipation of payments on the contracts coming to the contractors from the United States government or from railway companies, and by these pretenses, which were wholly false,—there being in fact no such contracts,—they imposed upon various people, including John C. Work and James Henry Work, and induced them to pay the firm money to be invested in interests in these alleged contracts. Prior to the dealings involved in this action, John C. Work seems to have had some such transactions with them, but these earlier transactions are not in question here. About April, 1883, James Henry Work, being himself fully satisfied as to the legitimacy of the business, and with no suspicion of its fraudulent character, with the consent of John C. Work, who was his father, invested about $14,000 of John C. Work's money in the business. James Henry Work was at the time investing a large amount of his own money, and, through him, various friends and business acquaintances of his were also making similar investments. The mode in which the business was done was as follows: One Warner, the brother-in-law of James Henry Work, who seems to have had more intimate relations with the firm of Grant & Ward than either of the Works, although it is claimed, and it may be true that he, also, was deceived in respect to the nature of the business, would agree with the firm to invest a certain sum of money in one of these contracts; the firm agreeing to pay for the money so advanced a certain sum, including the return of the advance, and a certain amount added as a profit on the advance at a certain time,—generally about 30 days after the advance was made. Then James Henry Work would indicate to Warner what part of the advance to be made by Warner he would take for himself and friends. Thereupon Grant & Ward gave written contracts to pay the stipulated amount at the date agreed upon, divided into such amounts as were reported to them by Warner; all the contracts running to bearer, and being made separately for Warner and of each of his friends, and for James Henry Work and each of his friends, including among the latter his father, John C. Work. The precise amount which each voucher or contract taken by James Henry Work represented or called for depended upon the agreement made by James Henry Work with the friend or investor for whom he was making the investment; and, in the case of his father and a few others, the amount, in respect to the addition of profit to the amount advanced, was fixed, not by any special agreement, but by an allotment made by James Henry Work. While this business was going on, John C. Work was in Europe. In case of others than his father the amount added for profit was less than the amount which James Henry Work was himself receiving as profit on the investment, so that he was in this way receiving a commission or compensation for doing the business so transacted for others. Whether in the case of John C. Work the added profits were any less than those received from or promised by Grant & Ward on the amount advanced for account of John C. Work, does not appear. There were no direct dealings between Grant & Ward and James Henry Work, or those investing through him, but only between Grant & Ward and Warner. The vouchers received by Warner for James Henry Work and his friends were passed over to James Henry Work, and on their maturity Grant & Ward paid the amounts coming due to Warner, who in turn paid the amounts com-

72 N.Y.S.—47

ing due to James Henry Work, and he in turn paid the amounts coming due to his friends and investors. On payment these vouchers or contracts were surrendered. Later a system grew up of arranging a reinvestment before the maturity of the vouchers,—either of the whole of the amounts falling due, or such part as the investors severally desired to invest in new alleged contracts of a similar nature; and in such cases differences only were in fact paid in money on the maturity of the vouchers. The business went on prosperously till May. 6, 1884, when the bubble burst. Grant & Ward failed. It was discovered that the whole business was a fraud on the part of Ward, the managing partner of the firm of Grant & Ward. There were no contracts with the government or others on which they were advancing money. The firm had succeeded in getting large loans from the Marine Bank, which was ruined by their operation, and the bank also failed a few days later. When the failure came, John C. Work's investments, by the frequent turning over of the money and its reinvestment, and the reinvestment of profits, had yielded him the $65,800 received and deposited to his account, and James Henry Work still held for him unmatured vouchers for the amount of his original capital and $10,000 in addition thereto. James Henry Work had received in profits about $250,000 beyond his own investments, and held unmatured vouchers for about $750,000, which included an original capital of $40,000 or $60,000. Grant & Ward and Ward individually made assignments for the benefit of creditors. The assignee of the firm was also appointed receiver in the creditors' action against the firm. Ward was induced to convey his real estate to Warner, which was claimed to be a transfer in trust for the holders of unmatured vouchers, who were also preferred creditors under the firm's assignment. Litigations, various and complicated, were commenced, in which James Henry Work was involved as a defendant. In one of the actions John C. Work was a defendant. The good faith of Warner and James Henry Work were impugned, and threats of criminal prosecutions were made against them. For several years James Henry Work was engaged in settling up the business, and he finally paid $200,000 to the receiver of the Marine Bank and about $20,000 in expenses of all kinds, and about $65,000 to obtain the consent of preferred creditors, holders of unmatured vouchers, whose claim against the real estate of Ward, and whose position under the firm's assignment, enabled them to throw obstacles in the way of the proposed settlement. A judgment was recovered by Ward's assignee against Warner for $1,400,000. James Henry Work's effort at settlement and the payments he made were partly for the protection and relief of Warner and his estate. A settlement ending all litigation was ultimately effected. It may be that these payments made by James Henry Work inured in part to the benefit of John C. Work and his estate. He died in 1887, before the settlement was consummated."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

John E. Parsons, for appellant.
Thomas Thacher, for executors respondents.
Charles Fox, for beneficiaries respondents.

O'BRIEN, J. The appellant contends that James Henry Work could not, as against the creditors of Grant & Ward generally, represented by Julien T. Davies as receiver, retain the moneys which had come to him from them; that these belonged to the creditors of Grant & Ward, and while in the possession of that firm could be recovered in the ordinary way, and the firm could not put such moneys beyond the reach of its creditors by turning them over to James Henry Work without valid consideration received therefor; that, passing the question whether Grant & Ward or their assignee could recover these moneys, it is manifest that they could not put

them beyond the reach of their creditors by what was tantamount to a gift to James Henry Work, and, if the latter be treated as an agent, he was dealing as principal, his agency not being disclosed, and, under these circumstances, whatever liability resulted rested upon him; that equally there can be no question of the liability of James Henry Work by reason of the fact that he and his father were jointly concerned in the transactions; that the money paid by James Henry Work to John C. Work is recoverable upon the general doctrine applicable to a payment made in a case where there has been a mutual mistake of fact (Bank v. Eltinge, 40 N. Y. 391, 100 Am. Dec. 516), and also recoverable for the reason, if it be assumed that the relation between him and John C. Work was that of principal and agent, that in the discharge of the business of his agency he incurred, while acting in good faith and within his authority, a liability for which he had the right to be protected by his principal; that, as his action realized to his principal the $65,800 in question, his protection requires that such amount should be returned to him.  These same contentions were urged upon the attention of the learned referee, and were disposed of adversely to the appellant; and, concurring as we do in his conclusion, it would be unnecessary again to consider them, were it not for the force and ability with which they have been argued on this appeal, the importance of the questions, the large amount involved, and the suggestion that with respect to some of the evidence the referee fell into error.  Thus, it is claimed that the referee erroneously assumed that exclusive of the $65,800 which went to John C. Work, the father, James Henry Work had received individually the further sum of $250,000.  We do not think that this claim is borne out by a reading of the entire opinion, which shows with reasonable clearness that the $250,000 which James Henry Work received as profits included the amount which he paid to his father.  However this may be, we will assume in our discussion what appears from the evidence,—that such was the fact, and that, in the settlement made, the total amount expended by James Henry Work in the way of expenses and payments to preferred creditors and to the receivers exceeded, inclusive of the sums paid to his father, all that he had received in the shape of profits from the firm of Grant & Ward.  It still remains true, however, that in such settlement no specific reference was made to the moneys paid the father, although the effect may have been to relieve him and his estate from liability therefor; and there is no proof that they were, as matter of fact, taken into account.  Recognizing that these sums were received through James Henry Work, and assuming that in some way they may have formed a part of the liability charged against him (of which, however, as we have said there is no proof), it would seem, as a matter of first impression, that there was some equitable basis upon which the moneys received by the father, and for which the son may in some way have been held to account, should be returned to the latter.  The difficulty, however, is that upon this record there is no legal principle which will sustain such a recovery.  Had it been shown (1) that the son was himself liable for the restoration of some or all of the money which he had paid to his father, or (2) that

by his settlement a valid claim against the father or his estate was satisfied, there might be some proper basis for a recovery; but a brief consideration of these grounds shows that there is nothing in the testimony to support either of them.

It is not contended that any proof was adduced of authority on the part of James Henry Work to act for or incur expenses in behalf of his father in any of the matters referred to, nor of any authority from the executors to do so, and we do not understand that a recovery is sought upon any such theory; the basis of the claim, as we take it, being that upon the discovery of the fact that the firm of Grant & Ward made no profits, had no contracts, and practically did no business, James Henry Work was entitled to recover back from his father the payments made to him. Such recovery, however, as already suggested, could only be upon the grounds either that the son could recover against the father, or that the son was under legal liability himself to restore these sums to the funds of that firm; and this latter, as we understand it, is recognized by the appellant; the contention being that, regarding James Henry Work as an agent, he was an agent whose principal was not disclosed, and who, it is urged, was individually liable,—citing Newall v. Tomlinson, L. R. 6 C. P. 405; U. S. v. Pinover (D. C.) 3 Fed. 309. In this argument the appellant concedes that the general rule is that an agent, known and treated as such, cannot be compelled to pay back moneys received by him under mutual mistake of fact, and paid over to his principal. The distinction thus sought to be made, and which is, no doubt, sound, is between a disclosed and an undisclosed agent; and, although it might be interesting to review the cases in which this subject is discussed, that is unnecessary here, for, again, there is absence of the proof requisite to support the assumption that James Henry Work was treated in the transaction as a principal, and not as an agent. As shown by the evidence, the system followed was for Grant & Ward on each investment to issue several vouchers for varying amounts, all payable to bearer; but the deduction does not follow from this that the vouchers which James Henry Work received were all intended for him individually, and there is no sufficient evidence that Grant & Ward were ignorant of his agency. This firm, moreover, did not, as a rule, deal directly with Work, but with his brother-in-law, Warner, who gave certain of the vouchers to Work; and there is nothing in the record which would justify passing Warner as principal, and placing such liability on James Henry Work. If, therefore, the case were to turn upon the want of knowledge on the part of Grant & Ward of the agency, the answer is that there is no proof that the firm was ignorant of such agency. Furthermore, we doubt if the distinction sought to be made, in view of the other facts here appearing, would apply. It is conceded that James Henry Work, in good faith, and in ignorance of the fraudulent conduct of Grant & Ward, received the money, part of which, to the extent stated, he gave to his father; and we have been referred to no case which goes to the extent of holding that, in the absence of fraud or bad faith, one who, while acting on behalf of another, pays over money he has received, is obliged to return the same be-

cause the person from whom he received it did not know that he was merely an agent. It is certain that Grant & Ward could not recover the money from James Henry Work, because they paid it under no mistake of fact; and it would only be upon the ground that the money had been taken from creditors, and to that amount their chances of payment had been lessened, that it could be recovered. With respect to creditors, however, the money could only be recovered to the extent that they had been injured; and here, again, proof is wanting, for, although there is evidence that Grant & Ward were insolvent, the amount of such insolvency is not shown; nor does it appear how much James Henry Work should contribute to make up the sum required for the creditors. And, assuming it were necessary that these profits should be restored, there is no evidence as to how many persons or how large a fund, if any, could be drawn upon to pay creditors. And apart from all this, as we have shown, had an attempt been made by the creditors, or those representing them,—such as the receivers,—to enforce liability against James Henry Work, he could escape such liability by showing that he was merely an agent who had, in good faith, in the line of his duties, paid over the moneys to his principal.

When we come to the question of whether by the settlement a valid claim against the estate of John C. Work was satisfied, or inquire into the considerations or reasons that actuated the settlement by James Henry Work, we have no evidence that anything was paid on account of the money he had given to his father; but it does appear that the payment was made in order to settle a judgment of $140,000 against Warner, to prevent both Warner and himself from being prosecuted criminally, and to compromise any and all claims which the firm of Grant & Ward or its creditors might have against them. There is nothing to show what, if anything, was paid on account of moneys given to the father. The result may have been to free the father's estate from liability; but even this does not appear, except by inference so slight that no finding of fact or conclusion of law could be based upon it.

Although, therefore, the questions suggested on this appeal are important and interesting, we do not think it necessary to extend this discussion further than to show that many of those urged upon our attention are, owing to lack of proof, not sustainable, and that the failure, as urged, of the referee to state clearly every fact which led the appellant to think that he had inadvertently fallen into error, in no way militates against his able summary of the facts involved, or his sound legal conclusions; and, as in these we concur, it necessarily follows that the judgment should be affirmed, with costs. All concur.